UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

|  |  |  |
|---|---|---|
| ———————————————— x | | |
| IBEW LOCAL 90 PENSION FUND, On Behalf of Itself and All Others Similarly Situated, | : : : : | Civil Action No. 11-cv-04209-KBF-JCF

CLASS ACTION |
| Plaintiff, | : : | LEAD PLAINTIFFS' AND IBEW LOCAL 90 PENSION FUND'S MEMORANDUM OF |
| vs. | : : | LAW IN SUPPORT OF THE MOTION FOR CLASS CERTIFICATION AND TO |
| DEUTSCHE BANK AG, et al., | : : | INCLUDE IBEW LOCAL 90 PENSION FUND AS A NAMED PLAINTIFF |
| Defendants. | : : | |
| ———————————————— x | | ORAL ARGUMENT REQUESTED |

851657_1

# TABLE OF CONTENTS

**Page**

I. PRELIMINARY STATEMENT ...................................................................................1

II. STATEMENT OF FACTS COMMON TO THE CLASS ...........................................3

III. ARGUMENT ................................................................................................................6

    A. The Standard for Class Certification..................................................................6

    B. The Proposed Class Satisfies Rule 23(a) ..........................................................7

        1. The Proposed Class Is So Numerous that Joinder of All Members
            is Impracticable ......................................................................................7

        2. Questions of Law and Fact Common to the Members of the Class
            Exist .......................................................................................................8

        3. Plaintiffs' Claims Are Typical of the Class .........................................10

        4. Plaintiffs Will Fairly and Adequately Protect the Interests of the
            Class......................................................................................................12

    C. The Class Meets the Requirements of Rule 23(b)(3)..........................................14

        1. Common Questions of Law or Fact Predominate....................................14

        2. A Class Action is Superior to the Other Available Methods for the
            Efficient Adjudication of This Controversy ...........................................19

IV. THE COURT SHOULD ALLOW LOCAL 90 TO PARTICIPATE AS A
    PLAINTIFF IN THIS MATTER ..................................................................................21

V. CONCLUSION...........................................................................................................23

851657_1

# TABLE OF AUTHORITIES

**Page**

## CASES

*Amchem Prods., Inc. v. Windsor,*
  521 U.S. 591 (1997)..........................................................................................2

*Amgen Inc. v. Conn. Ret. Plans & Trust Funds,*
  _U.S._, 133 S. Ct. 1184 (2013) ..................................................................*passim*

*Basic Inc. v. Levinson,*
  485 U.S. 224 (1988)........................................................................................17

*Cammer v. Bloom,*
  711 F. Supp. 1264 (D.N.J. 1989) ...............................................................17, 18

*Cent. States Se. & Sw. Areas Health & Welfare Fund v. Merck-Medco Managed Care, L.L.C.,*
  504 F.3d 229 (2d Cir. 2007)............................................................................7

*Comcast Corp. v. Behrend,*
  _U.S._, 133 S. Ct. 1426 (2013)......................................................................6

*Darquea v. Jarden Corp.,*
  No. 06 Civ. 722 (CLB), 2008 U.S. Dist. LEXIS 17747
  (S.D.N.Y. Mar. 6, 2008) ..........................................................................13, 15

*Dietrich v. Bauer,*
  192 F.R.D. 119 (S.D.N.Y. 2000) ..............................................................*passim*

*Dura-Bilt Corp. v. Chase Manhattan Corp.,*
  89 F.R.D. 87 (S.D.N.Y. 1981) .......................................................................14

*Eisen v. Carlisle & Jacquelin,*
  417 U.S. 156 (1974).........................................................................................6

*Ellenburg v. JA Solar Holdings Co.,*
  262 F.R.D. 262 (S.D.N.Y. 2009) ..................................................................13

*Erica P. John Fund, Inc. v. Halliburton Co.,*
  _U.S._, 131 S. Ct. 2179 (2011).................................................................15, 16

*Green v. Wolf Corp.,*
  406 F.2d 291 (2d Cir. 1968)........................................................................2, 20

**Page**

*Hevesi v. Citigroup Inc.*,
    366 F. 3d 70 (2d Cir. 2004)....................................................................................1, 21

*IBEW Local 90 Pension Fund v. Deutsche Bank AG*,
    No. 11 Civ. 4209 (KBF), 2013 U.S. Dist. LEXIS 43774
    (S.D.N.Y. Mar. 27, 2013) .............................................................................10

*In re Alstom SA Sec. Litig.*,
    253 F.R.D. 266 (S.D.N.Y. 2008) ...........................................................13, 16, 18

*In re Arakis Energy Corp. Sec. Litig.*,
    No. 95-CV-3431 (ARR), 1999 U.S. Dist. LEXIS 22246
    (E.D.N.Y. Apr. 23, 1999)................................................................................2

*In re Blech Sec. Litig.*,
    187 F.R.D. 97 (S.D.N.Y. 1999) ....................................................................23

*In re Enron Corp. Sec.*,
    586 F. Supp. 2d 732 (S.D. Tex. 2008) ......................................................13, 14

*In re Flag Telecom Holdings, Ltd. Sec. Litig.*,
    574 F.3d 29 (2d Cir. 2009)........................................................................6, 11, 12

*In re Initial Pub. Offering Sec. Litig.*,
    260 F.R.D. 81 (S.D.N.Y. 2009) ....................................................................17

*In re Initial Pub. Offering Sec. Litig.*,
    471 F.3d 24 (2d Cir. 2006)..............................................................................6

*In re NASDAQ Market-Makers Antitrust Litig.*,
    169 F.R.D. 493 (S.D.N.Y. 1996) ..................................................................21

*In re NYSE Specialists Sec. Litig.*,
    260 F.R.D. 55 (S.D.N.Y. 2009) .............................................................. *passim*

*In re Oxford Health Plans, Inc. Sec. Litig.*,
    191 F.R.D. 369 (S.D.N.Y. 2000) ..................................................................22

*In re Salomon Analyst Metromedia Litig.*,
    544 F.3d 474 (2d Cir. 2008)......................................................................6, 17

*In re Scor Holding (Switz.) AG Litig.*,
    537 F. Supp. 2d 556 (S.D.N.Y. 2008).............................................................17

- iii -

**Page**

*In re SLM Corp. Sec. Litig.,*
No. 08 Civ 1029 (WHP), 2012 U.S. Dist. LEXIS 8158
(S.D.N.Y. Jan. 24, 2012).................................................................16

*In re Smart Techs., Inc. S'holder Litig.,*
No. 11 Civ. 7673 (KBF), 2013 U.S. Dist. LEXIS 4717
(S.D.N.Y. Jan. 11, 2013)....................................................6, 11, 15

*In re Telik, Inc. Sec. Litig.,*
576 F. Supp. 2d 570 (S.D.N.Y. 2008)..............................................15

*In re Top Tankers, Inc. Sec. Litig.,*
No. 06 Civ. 13761 (CM), 2008 U.S. Dist. LEXIS 58106
(S.D.N.Y. July 31, 2008) ...................................................................9

*In re Vivendi Universal, S.A. Sec. Litig.,*
242 F.R.D. 76 (S.D.N.Y. 2007) ........................................................7

*In re WorldCom, Inc. Sec. Litig.,*
219 F.R.D. 267 (S.D.N.Y. 2003) ....................................................16

*Jermyn v. Best Buy Stores, L.P.,*
276 F.R.D. 167 (S.D.N.Y. 2011) ......................................................9

*Kelleher v. ADVO, Inc.,*
No. 3:06CV01422(AVC), 2009 U.S. Dist. LEXIS 68914
(D. Conn. Mar. 27, 2009)................................................................13

*Koch v. Dwyer,*
98 Civ. 5519 (RPP), 2001 U.S. Dist. LEXIS 4085
(S.D.N.Y. Mar. 22, 2001) ...............................................................22

*Lapin v. Goldman Sachs & Co.,*
254 F.R.D. 168 (S.D.N.Y. 2008) ...............................................16, 17

*Moore v. PaineWebber, Inc.,*
306 F.3d 1247 (2d Cir. 2002)..........................................................14

*Phillips Petroleum Co. v. Shutts,*
472 U.S. 797 (1985).........................................................................20

*Public Emps. Ret. Sys. of Miss. v. Merrill Lynch & Co.,*
277 F.R.D. 97 (S.D.N.Y. 2011) ...........................................8, 9, 11, 21

851657_1

Page

*Teamsters Local 445 Freight Div. Pension Fund v. Bombardier, Inc.*,
   No. 05 Civ. 1898 (SAS), 2006 U.S. Dist. LEXIS 52991
   (S.D.N.Y. Aug. 1, 2006), *aff'd*, 546 F.3d 196 (2d Cir. 2008) ...........................................17, 18

*Trief v. Dun & Bradstreet Corp.*,
   144 F.R.D. 193 (S.D.N.Y. 1992) ...........................................................................................8

*Wal-Mart Stores, Inc. v. Dukes*,
   _U.S._, 131 S. Ct. 2541 (2011).................................................................................6, 8, 9, 11

## STATUTES, RULES AND REGULATIONS

15 U.S.C.
   §78j(b)...............................................................................................................................1, 15
   §78t(a).................................................................................................................................1, 2

Federal Rule of Civil Procedure
   Rule 15..................................................................................................................................22
   Rule 20..............................................................................................................................1, 22
   Rule 23........................................................................................................................ *passim*
   Rules 23(a)......................................................................................................1, 6, 7, 12, 14
   Rule 23(a)(1)...........................................................................................................................7
   Rule 23(a)(2)...........................................................................................................................8
   Rule 23(a)(3).........................................................................................................................10
   Rule 23(a)(4)...................................................................................................................12, 14
   Rule 23(b)..........................................................................................................................6, 14
   Rule 23(b)(3)............................................................................................................. *passim*

17 C.F.R.
   §240.10b-5 ................................................................................................................1, 2, 15, 19

851657_1

Lead Plaintiffs Building Trades United Pension Trust Fund, the Steward Global Equity Income Fund, the Steward International Enhanced Index Fund (collectively, "Lead Plaintiffs") and initial filing plaintiff, IBEW Local 90 Pension Fund ("Local 90") (collectively with Lead Plaintiffs, the "Funds" or "Plaintiffs"), respectfully move this Court for an order certifying this case as a class action pursuant to Rules 23(a) and 23(b)(3) of the Federal Rules of Civil Procedure, on behalf of a Class defined as:

> All purchasers of Deutsche Bank AG ("Deutsche Bank" or the "Company") ordinary shares on the New York Stock Exchange ("NYSE") and all purchasers of Deutsche Bank ordinary shares in any domestic transaction from January 3, 2007, through January 16, 2009 (the "Class Period"), who were damaged as a result of defendants' violations of federal securities laws. Excluded from the Class are defendants, the officers and directors of the Company, members of their immediate families and their legal representatives, heirs, successors or assigns and any entity in which defendant have or had a controlling interest.

¶189 (as modified to comply with the March 27, 2013 Opinion & Order at 4 n.2).[1]  Plaintiffs seek an order appointing them as Class Representatives, as well as an order appointing the law firm Robbins Geller Rudman & Dowd LLP ("Robbins Geller") as Class Counsel.  Plaintiffs also seek an order recognizing Local 90, the original filing plaintiff, as a plaintiff as permitted by the Second Circuit in *Hevesi v. Citigroup Inc.*, 366 F. 3d 70, 83 (2d Cir. 2004), or alternatively to rejoin this action pursuant to Fed. R. Civ. P. 20 or 15.

## I.    PRELIMINARY STATEMENT

This is a securities class action against Deutsche Bank and certain former executives of the Company for violation of §10(b) and Rule 10b-5, and §20(a) of the Exchange Act of 1934.  The Complaint alleges that plaintiffs were damaged because they purchased Deutsche Bank securities

---

[1]    Defendants are Deutsche Bank, Josef Ackermann, Hugo Bänziger and Anthony Di Iorio (collectively, "Defendants").  All "¶__" references are to Lead Plaintiffs' Amended Complaint for Violation of the Federal Securities Laws ("Complaint').  Dkt. No. 23.

during the Class Period at prices that were artificially inflated by Defendants' fraudulent scheme to profit by originating and acquiring defective mortgages for securitization and re-securitization into its residential mortgage-backed securities ("RMBS") and collateralized debt obligations ("CDOs"). ¶¶6, 24.  Unbeknownst to plaintiffs, Defendants misrepresented Deutsche Bank's risk management practices and concealed that it failed to write down impaired mortgage-related securities.  *Id.* Defendants ultimately admitted at the end of the Class Period that Deutsche Bank suffered $4.5 billion in losses relating to its RMBS holdings.  ¶181.

United States Supreme Court and Second Circuit precedent holds that class certification is favored in securities actions such as this.  *See, e.g.*, *Amgen Inc. v. Conn. Ret. Plans & Trust Funds*, _U.S._, 133 S. Ct. 1184, 1201-02 (2013); *Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 625 (1997); *Green v. Wolf Corp.*, 406 F.2d 291, 296 (2d Cir. 1968); *In re NYSE Specialists Sec. Litig.*, 260 F.R.D. 55, 80 (S.D.N.Y. 2009) ("'[c]ourts have long recognized that [c]lass actions are a particularly appropriate and desirable means to resolve claims based on the securities laws'")[2] (alterations in original); *Dietrich v. Bauer*, 192 F.R.D. 119, 122 (S.D.N.Y. 2000) ("[T]he Second Circuit has 'traditionally favored the use of class actions for the resolution of securities law claims, in particular those brought under Rule 10b-5.'"); *In re Arakis Energy Corp. Sec. Litig.*, No. 95-CV-3431 (ARR), 1999 U.S. Dist. LEXIS 22246, at *16 (E.D.N.Y. Apr. 23, 1999) ("[T]he Second Circuit has expressed a strong preference for use of the class action device in resolving securities law claims.").  As in other securities fraud class actions, certifying this Class allows single individuals and other parties to protect their rights against a large multinational corporation which otherwise might not be possible.  *Amgen*, 133 S. Ct. at 1202.

---

[2]   Citations are omitted and emphasis added unless otherwise indicated.

As well as being ideally suited for certification under Fed. R. Civ. P. 23, this action meets all of the requirements of Rule 23.  Plaintiffs demonstrate below that the class members are so numerous and geographically dispersed across the country that joinder would be impracticable, that Plaintiffs' claims against Deutsche Bank present common questions of law and fact, and are typical of other class members' claims, and that Plaintiffs can adequately serve as Class Representatives. Moreover, under Rule 23(b)(3), common issues will predominate over individual issues and the class action process is superior to any other method of adjudicating these claims.

## II.   STATEMENT OF FACTS COMMON TO THE CLASS

The Complaint asserts that Defendants violated federal securities laws by perpetrating a scheme to defraud investors involving the origination, securitization, and sale of RMBS and CDOs. Defendants concealed and misled investors about its pursuit of this scheme, and instead, falsely told investors that Deutsche Bank practiced sound risk management practices.  Defendants knew, however, that the RMBS and CDOs were backed by defective mortgages whose originators failed to comply with underwriting guidelines.  As delinquencies increased on the underlying mortgages, Defendants failed to take write-downs on the impaired mortgage-backed securities.  By the end of the Class Period, Deutsche Bank admitted that the bank suffered losses of approximately $4.5 billion as a result of its RMBS holdings.  ¶181.

Deutsche Bank was the subject of a case study in the U.S. Senate's Levin-Coburn Subcommittee Report on the financial crisis and subprime mortgage scandal.  ¶25.  The Senate's investigation revealed that Defendants were warned about the quality of the RMBS and CDOs Deutsche Bank created and sold.  ¶¶25-26.  In e-mails, Greg Lippmann ("Lippmann"), Deutsche Bank's Global Head of CDO Trading and top global RMBS trader, described the securities as "crap" and "pigs" and admitted that that they would "TRY TO DUPE SOMEONE" into purchasing them.

¶¶26-27, 29.  Aware that that RMBS/CDO market "HAS A REAL CHANCE OF MASSIVELY BLOWING UP," Lippmann sought and received permission from Deutsche Bank executives to take a short position on RMBS securities.  ¶¶30, 33-36, 38-39.  Lippmann made at least two presentations to Deutsche Bank executives explaining the slowdown in the housing market and the vulnerabilities in the subprime mortgage market.  ¶¶34, 40.

Yet even as Defendants approved Lippmann's short position, Deutsche Bank was heavily invested in long RMBS and CDO securities.  ¶¶39, 41.  Deutsche Bank also continued to package and sell RMBS and CDOs to investors, even structuring new CDOs from the securities' riskiest level tranches that they could not sell, which Lippmann called a "CDO2 balance sheet dump."  ¶46.  For one CDO the Senate examined, Gemstone 7, $27 million of its assets came from Deutsche Bank's own inventories.  ¶52.  Lippmann called these same assets "PIG," "PIECE O CRAP," "generally horrible," and admitted that they "stink[]," and "blow[]."  ¶¶55, 57-59.

Besides the insight from their trading desk, Defendants knew the true quality of these assets because they originated mortgages for securitization.  In July 2006, Deutsche Bank acquired MortgageIT Holdings, Inc. ("MortgageIT") to "increase its presence in the US mortgage markets." ¶87.  The partnership exploited the lax underwriting standards then existing at MortgageIT and in fact, increased the problems, according to a lawsuit filed by the U.S. Department of Justice in 2011. ¶¶107-116.  Although MortgageIT received Direct Endorsement Lender status from the Federal Housing Agency ("FHA"), which provided federal insurance for the mortgages in the program, MortgageIT, with Deutsche Bank's acknowledgement and approval, failed to comply with the quality control requirement to ensure eligibility for the FHA insurance.  ¶¶83-85, 97-100.  As the lawsuit revealed, MortgageIT and Deutsche Bank failed to investigate early payment defaults, though required to by the FHA, and understaffed its quality control departments.  ¶¶83, 110-112.  In

851657_1

accordance with Deutsche Bank's emphasis of quantity over quality in its mortgage origination channel, by the end of 2007, Deutsche Bank and MortgageIT moved the one remaining quality control auditor to work solely in production.   ¶113.   Aware of MortgageIT's nationwide, institutionalized failure to comply with underwriting guidelines, Deutsche Bank nevertheless packaged MortgageIT-originated mortgages into its securitizations.   ¶¶87-88.

Even though Defendants were aware of the poor quality assets in their RMBS and CDOs, they represented to the market that they were managing their risks at "a coordinated manner at all relevant levels within our organization.   This also holds true for complex products which we typically manage within our framework established for trading exposures."   ¶141.   Other false disclosures claimed Deutsche Bank was "even tighten[ing] further our credit standards," employing "[p]rudent risk management," was "not exposed to further deterioration in US sub-prime mortgages," and that its "[e]xposure to US mortgage originators [is] tightly managed and largely hedged."   ¶¶143-144, 147-149.

These false statements concealed what Defendants knew: their fraudulent scheme to make short term profits selling RMBS and CDOs had placed significant risk onto Deutsche Bank's books in the form of thousands of poorly underwritten mortgages.   ¶¶141, 146, 155.   Deutsche Bank also refused to show impairments to their assets despite their knowledge of the true quality of the RMBS and CDOs.   ¶¶41, 66-69, 73.   As the mortgage market collapsed, however, Deutsche Bank's RMBS and CDOs also deteriorated in value.   Starting on April 29, 2008, Deutsche Bank announced it had to take write-downs on its U.S. mortgage-related assets, ultimately admitting it incurred $4.5 billion in losses on U.S. residential mortgage.   ¶¶160-174, 181.   With Defendants' revelation of the fraud, Deutsche Bank's share price fell 86% from its Class Period high in May 2007 of $159.59 per share to $21.27 per share on January 20, 2009.   ¶181.   Plaintiffs now seek class certification.

### III.   ARGUMENT

#### A.   The Standard for Class Certification

"Class certification is warranted under Rule 23 where the proposed class representative meets the standards of Rule 23(a) – numerosity, commonality, typicality, and adequacy – and the proposed class action meets the requirements of one of the subsections of Rule 23(b)." *In re Salomon Analyst Metromedia Litig.*, 544 F.3d 474, 478 (2d Cir. 2008); *see also* Fed. R. Civ. P. 23(a).  Here, plaintiffs seek to certify their claims pursuant to Rule 23(b)(3), which requires that: (1) "questions of law or fact common to class members predominate over any questions affecting only individual members"; and (2) "a class action is superior to other available methods for fairly and efficiently adjudicating the controversy." Fed. R. Civ. P. 23(b)(3).  The requirements of Rule 23(a) are less demanding than Rule 23(b)(3).  *Comcast Corp. v. Behrend*, _U.S._, 133 S. Ct. 1426, 1432 (2013).  Still, "'the standard of proof applicable to evidence proffered to meet' the requirements of Rule 23 [is] a 'preponderance of the evidence.'" *In re Flag Telecom Holdings, Ltd. Sec. Litig.*, 574 F.3d 29, 35 (2d Cir. 2009).

In considering a class certification motion, courts are to focus only on whether the prerequisites of Rule 23 are met.  *See Eisen v. Carlisle & Jacquelin*, 417 U.S. 156, 177 (1974).  Although the Supreme Court has cautioned that a court should conduct a "'rigorous analysis'" to determine whether the elements of Rule 23 have been met (*Wal-Mart Stores, Inc. v. Dukes*, _U.S._, 131 S. Ct. 2541, 2551 (2011)), "class certification should not 'become a pretext for a partial trial of the merits.'"  *In re Smart Techs., Inc. S'holder Litig.*, No. 11 Civ. 7673 (KBF), 2013 U.S. Dist. LEXIS 4717, at *9 (S.D.N.Y. Jan. 11, 2013) (Forrest, J.); *In re Initial Pub. Offering Sec. Litig.*, 471 F.3d 24, 41 (2d Cir. 2006) (district just has "considerable discretion to limit both discovery and the extent of the hearing on Rule 23 requirements" to avoid "a protracted mini-trial of substantial

portions of the underlying litigation."). Thus, "[m]erits questions may be considered to the extent – but only to the extent – that they are relevant to determining whether the Rule 23 prerequisites for class certification are satisfied." *Amgen*, 133 S. Ct. at 1195. There are no merits-based issues that impact the Court's consideration of class certification here.

As demonstrated below, Plaintiffs and this action satisfy the Rule 23(a) prerequisites and the Rule 23(b)(3) requirements, in that common questions of law and fact predominate and a class action here is superior to alternative methods for the fair and efficient adjudication of Defendants' alleged violations of the federal securities laws. Accordingly, class certification is appropriate here and the Court should grant this motion.

**B.      The Proposed Class Satisfies Rule 23(a)**

**1.      The Proposed Class Is So Numerous that Joinder of All Members is Impracticable**

Rule 23(a)(1) permits class certification if "the class is so numerous that joinder of all members is impracticable." Fed. R. Civ. P. 23(a)(1). "The numerosity requirement in Rule 23(a)(1) does not mandate that joinder of all parties be impossible – only that the difficulty or inconvenience of joining all members of the class make use of the class action appropriate." *Cent. States Se. & Sw. Areas Health & Welfare Fund v. Merck-Medco Managed Care, L.L.C.*, 504 F.3d 229, 244-45 (2d Cir. 2007); *Dietrich*, 192 F.R.D. at 123.

Plaintiffs easily satisfy this requirement. "'In securities fraud class actions relating to publicly owned and nationally listed corporations, the numerosity requirement may be satisfied by a showing that a large number of shares were outstanding and traded during the relevant period.'" *In re Vivendi Universal, S.A. Sec. Litig.*, 242 F.R.D. 76, 84 (S.D.N.Y. 2007). In fact, numerosity is presumed when a class consists of 40 members or more. *NYSE Specialists*, 260 F.R.D. at 70.

- 7 -

Here, the proposed Class of Deutsche Bank investors far exceeds 40 members.  Indeed, throughout the Class Period, Deutsche Bank reported trading volume of more than 378 million shares and hundreds of institutional investors owning Deutsche Bank stock.  Declaration of Michael A. Marek ("Marek Decl.") at 11.  The average weekly trading volume for Deutsche Bank common stock was more than 3.55 million shares and the average weekly trading volume over the Class Period as a percentage of shares outstanding was in excess of 5% at all times.  *Id.*  As such, Plaintiffs believe – and Defendants cannot seriously dispute – that there are thousands of geographically dispersed members of the proposed Class, more than satisfying the numerosity requirement.

### 2.     Questions of Law and Fact Common to the Members of the Class Exist

To establish commonality, a plaintiff must demonstrate that "there are questions of law or fact common to the class."  Fed. R. Civ. P. 23(a)(2).  "Commonality does not mandate that all class members make identical claims and arguments" (*Trief v. Dun & Bradstreet Corp.*, 144 F.R.D. 193, 198 (S.D.N.Y. 1992)), but "'is met if plaintiffs' grievances share a common question of law or fact. Even a single common legal or factual question will suffice.'"  *NYSE Specialists*, 260 F.R.D. at 70 (quoting *Freeland v. AT&T Corp.*, 238 F.R.D. 130, 140 (S.D.N.Y. 2006)); *Wal-Mart*, 131 S. Ct. at 2556 ("'[e]ven a single [common] question' will do") (alterations in original).  Thus, "[t]he commonality requirement has been applied permissively by courts in the context of securities fraud litigation, and minor variations in the class members' positions will not suffice to defeat certification."  *Dietrich*, 192 F.R.D. at 124.

While the Supreme Court in *Wal-Mart* stressed that plaintiffs cannot satisfy the commonality requirement just by alleging violations of the same provision of law (131 S. Ct. 2541, 2550-51), what matters – and what the proposed Class satisfies here – is "'the capacity of a classwide proceeding to generate common ***answers*** apt to drive the resolution of the litigation.'"  *Public Emps.*

*Ret. Sys. of Miss. v. Merrill Lynch & Co.*, 277 F.R.D. 97, 106 (S.D.N.Y. 2011). Unlike the plaintiffs in *Wal-Mart*, Plaintiffs alleged a theory that ties the class members to each other and to the Defendants: because of Defendants' fraudulent conduct and their material misrepresentations and omissions during the Class Period relating to its origination, sale and exposure to RMBS and CDOs, Defendants improperly inflated the price of the same Deutsche Bank securities owned by all proposed Class Members until the over-exposure was revealed and Deutsche Bank's drastic write-downs caused its stock to plummet. ¶¶6, 41, 175. *See also Public Emps.*, 277 F.R.D. at 106 ("the facts in *Wal-Mart*, a case in which three named plaintiffs sought to represent a class of 1.5 million women in an employment discrimination suit, are entirely distinguishable from the facts of the instant securities class action"); *Jermyn v. Best Buy Stores, L.P.*, 276 F.R.D. 167, 172-73 (S.D.N.Y. 2011) (contrasting corporate-approved deceptive business practices alleged at Best Buy with the discretionary employment decisions by local branches that formed *Wal-Mart* plaintiffs' discrimination claims and finding commonality in plaintiffs' claims).

Whether Defendants violated the securities fraud laws by their deceptive conduct and false and misleading representations or omissions will require evidentiary proof that will necessarily be common to all Class members. *In re Top Tankers, Inc. Sec. Litig.*, No. 06 Civ. 13761 (CM), 2008 U.S. Dist. LEXIS 58106, at *30 (S.D.N.Y. July 31, 2008) (the common issues test is readily met in securities fraud cases because by their very nature, they "usually allege a common course of conduct."). Among the questions of fact or law common to the members of the Class are:

(a) Whether Defendants violated the Exchange Act of 1934 by the acts and conduct alleged in the Complaint;

(b) Whether Defendants made materially false and misleading statements or omissions in its U.S. Securities and Exchange Commission ("SEC") filings, press releases and other

statements disseminated to the investors regarding its risk controls and exposures to the mortgage markets;

(c)     Whether Defendants acted with scienter;

(d)     Whether Deutsche Bank stock's market price was artificially inflated during the Class Period due to the alleged misleading statements and omission; and

(e)     The extent of damages sustained by Class members and the appropriate measure of damages.

*See* ¶191.

This Court has already sustained the Complaint's allegations regarding the Class Period for which Plaintiffs seek certification and upheld the sufficiency of the alleged fraud. *See generally IBEW Local 90 Pension Fund v. Deutsche Bank AG*, No. 11 Civ. 4209 (KBF), 2013 U.S. Dist. LEXIS 43774, at *25 (S.D.N.Y. Mar. 27, 2013). Specifically, this Court held that the Complaint "clearly alleged both a scheme to defraud and particular misstatements and omissions." *Id.* As the Court explained, "[a]ccording to plaintiffs, investors were misled by the scheme, misled by the specific misstatements and omissions, relied upon the total picture presented to them, and engaged in purchases of Deutsche Bank securities, causing loss." *Id.* at *39-*40. Each of the items the Court listed form the basis of Plaintiffs' claims, and are necessarily common to all members of the class. The issues presented here are quintessential "common questions" of law and fact that support Plaintiffs' request for class certification.

### 3.     Plaintiffs' Claims Are Typical of the Class

Certification requires that "the claims . . . of the representative parties [be] typical of the claims . . . of the class." Fed. R. Civ. P. 23(a)(3). "Rule 23(a)(3)'s typicality requirement is satisfied when 'each class member's claim arises from the same course of events, and each class member

- 10 -

makes similar legal arguments to prove the defendant's liability.'" *NYSE Specialists*, 260 F.R.D. at 70 (quoting *Robinson v. Metro-North Commuter R.R. Co.*, 267 F.3d 147, 155 (2d Cir. 2001).  This requirement "'tend[s] to merge'" with the commonality requirement.  *Smart Techs.*, 2013 U.S. Dist. LEXIS 4717, at *10; *Wal-Mart*, 131 S. Ct. at 2551 n.5.  To meet the requirement, "[p]laintiffs are not required, in proving typicality, to show that the situations of the named representatives and the class members are identical.'"  *Public Emps.*, 277 F.R.D. at 109.  Rather, establishing typicality entails showing that "'each class member's claim arises from the same course of events and each class member makes similar legal arguments to prove the defendant's liability.'"  *Flag Telecom*, 574 F.3d at 35.  The claims here arise from Defendants' uniform course of conduct, and each class member makes similar legal arguments to prove each Defendant's liability.

Plaintiffs purchased more than 47,000 Deutsche Bank securities on the NYSE during the Class Period.  Plaintiffs then suffered a significant loss when the fraud was revealed and the price of Deutsche Bank shares plummeted.  ¶181.  Thus, Plaintiffs' claims are not only similar to those of the other Class members, they are virtually identical.  All of the Class members seek to prove that Defendants carried out a scheme to defraud and misled investors with false statements and omissions relating to Deutsche Bank originating, structuring and selling poor-quality RMBS and CDOs while concealing its risk management shortcomings and mounting failure to take impairments on its exposure to mortgage-related debt.  Defendants' same course of conduct injured Plaintiffs and likewise the other Class members when the truth was revealed.  The damages the Class members seek arise from their purchase of Deutsche Bank securities at artificially inflated prices resulting from Defendants' fraud, and the subsequent decline in Deutsche Bank's stock price when the fraud came to light.

851657_1

The proposed Class includes investors who acquired Deutsche Bank stock on a U.S. exchange or in other U.S. domestic transactions.  According to Deutsche Bank's Internet page, Deutsche Bank ordinary shares trade on the Deutsche Borse under the symbol DBK with the ISIN code DE0005140008 and on the New York Stock Exchange under the symbol DB and the CINS code D 18190898.  Price Decl., Exhibit 1.[3]  Documents attached to the Price Declaration demonstrate that Building Trades (Ex. 2), the Steward Funds (Ex. 3) and Local 90 (Ex. 4) acquired their shares in domestic U.S. transactions.  The documents identify the code D18190898, ticker, currencies and commissions associated with U.S. exchange transactions.  Thus, Plaintiffs stand in precisely the same position as other purchasers of Deutsche Bank's securities during the Class Period.  *See Flag Telecom*, 574 F.3d at 35.  Accordingly, typicality is satisfied here.

### 4.    Plaintiffs Will Fairly and Adequately Protect the Interests of the Class

Rule 23(a) requires Plaintiffs to establish that "the representative parties will fairly and adequately protect the interests of the class."  Fed. R. Civ. P. 23(a)(4).  This requirement is met if a plaintiff does not have interests that are antagonistic to those of the class, and its chosen counsel is qualified, experienced and generally able to conduct the litigation.  *See NYSE Specialists*, 260 F.R.D. at 73 (citing *Baffa v. Donaldson*, 222 F.3d 52, 60 (2d Cir. 2000)).

Plaintiffs satisfy both prongs of the adequacy test.  As noted above, Plaintiffs have already successfully represented the interest of the proposed Class and demonstrated their adequacy to prosecute this action by, among other things, filing a comprehensive complaint and defeating Defendants' motion to dismiss.  In addition, none of their interests are antagonistic to those of the

---

[3]    "Price Decl." refers to the Declaration of Ashley M. Price in Support of Lead Plaintiffs' and IBEW Local 90 Pension Fund's Motion for Class Certification, filed herewith.

Class.  All members of the Class allege claims arising from the same wrongful conduct that are based on the same legal theories as Plaintiffs' claims.  *See, e.g.*, *Darquea v. Jarden Corp.*, No. 06 Civ. 722 (CLB), 2008 U.S. Dist. LEXIS 17747, at *9 (S.D.N.Y. Mar. 6, 2008) ("All claims alleged arise from the same wrongful conduct, and thus, Plaintiff's interests, recouping money invested, are similar to those of the proposed class.  As such, named Plaintiffs will fairly and adequately protect the interests of the class.").  Therefore, the interests of the other members of the Class will be adequately protected by Plaintiffs, as they have been since the inception of this action.

As to the second adequacy prong, Plaintiffs have retained the law firm Robbins Geller to represent it and the proposed Class in this matter.  This counsel possesses extensive securities litigation experience and have successfully prosecuted hundreds of securities fraud cases for injured investors in this District and across the country.  As courts in this District have previously found, "[g]iven [Robbins Geller's] substantial experience in securities class action litigation . . . [the] element of adequacy has also been satisfied."[4]  *NYSE Specialists*, 260 F.R.D. at 74.  Among many noteworthy securities fraud cases, Robbins Geller (then known as Coughlin Stoia Geller Rudman & Robbins LLP) served as lead counsel in *In re Enron Corp. Sec. Litig.*, No. H-01-3624 (S.D. Tex.), and secured the largest recovery ever obtained for a shareholder class.  *See In re Enron Corp. Sec.*, 586 F. Supp. 2d 732, 790 (S.D. Tex. 2008).  Lead Counsel's outstanding reputation, experience, and success in securities litigation nationwide were a major reason why the Regents selected the firm.").  Specifically commenting on counsel's "clearly superlative litigating and negotiating skills" and the firm's "outstanding reputation, experience, and success in securities litigation nationwide," that court

---

[4]  *See, e.g.*, *Ellenburg v. JA Solar Holdings Co.*, 262 F.R.D. 262, 267-68 (S.D.N.Y. 2009); *Kelleher v. ADVO, Inc.*, No. 3:06CV01422(AVC), 2009 U.S. Dist. LEXIS 68914, at *15 (D. Conn. Mar. 27, 2009); *In re Alstom SA Sec. Litig.*, 253 F.R.D. 266, 278 (S.D.N.Y. 2008).

- 13 -

stated, "[t]he experience, ability, and reputation of the attorneys of [Robbins Geller] is not disputed." *Id*. at 789-90, 797. Accordingly, the requirements of Rule 23(a)(4) are satisfied.

### C.      The Class Meets the Requirements of Rule 23(b)(3)

In addition to meeting the requirements of Rule 23(a), a class action must also satisfy at least one of the three conditions imposed by Rule 23(b). Here, Plaintiffs move for class certification under Rule 23(b)(3), which calls on Plaintiffs to demonstrate that: (1) the "questions of law or fact common to class members predominate over any questions affecting only individual members"; and (2) "a class action is superior to other available methods for fairly and efficiently adjudicating the controversy." Fed. R. Civ. P. 23(b)(3). This action satisfies Rule 23(b)(3).

### 1.      Common Questions of Law or Fact Predominate

"'The Rule 23(b)(3) predominance inquiry tests whether proposed classes are sufficiently cohesive to warrant adjudication by representation,'" and so requires that issues "subject to generalized proof outweigh those subject to individualized proof." *NYSE Specialists*, 260 F.R.D. at 74-75; *Moore v. PaineWebber, Inc.*, 306 F.3d 1247, 1252 (2d Cir. 2002) (class-wide issues predominate where particular issues requiring individualized proof are less substantial than the resolution through generalized proof of a legal or factual question that affects each class member's case). But "predominance does not require a plaintiff to show that there are no individual issues." *NYSE Specialists*, 260 F.R.D. at 75. "[I]ndividual issues will likely arise in this as in all class action cases. But, to allow various secondary issues of plaintiffs' claim to preclude certification of a class would render the rule an impotent tool for private enforcement of the securities laws." *Dura-Bilt Corp. v. Chase Manhattan Corp.*, 89 F.R.D. 87, 99 (S.D.N.Y. 1981).

In *Amgen*, the Supreme Court recently emphasized that "Rule 23(b)(3) requires a showing that ***questions*** common to the class predominate, not that those questions will be answered, on the

merits, in favor of the class."  133 S. Ct. at 1191 & 1195 (emphasis in original).  "Although Rule 23(b)(3)'s 'predominance' requirement is more exacting tha[n] Rule 23(a)'s 'commonality' prerequisite, the 'court's [Rule 23(b)(3)] inquiry is directed primarily toward whether the issue of liability is common to members of the class.'"  *Smart Techs.*, 2013 U.S. Dist. LEXIS 4717, at *10 (second alteration in original).

Consideration of whether questions common to the class predominate "begins . . . with the elements of the underlying cause of action," in this case the elements of the a private securities fraud action under §10(b) and Rule 10b-5.  *Erica P. John Fund, Inc. v. Halliburton  Co.*, _U.S._, 131 S. Ct. 2179, 2184 (2011).

Here, Defendants' liability arises from their fraudulent scheme and dissemination of materially false and misleading statements and omissions during the Class Period to artificially inflate Deutsche Bank's share price.  The issues that predominate are whether Defendants' statements were materially false and misleading or their acts were deceptive and whether Defendants knew or recklessly disregarded those facts.  Individual claims would also have to prove the same elements.  As the court in *In re Telik, Inc. Sec. Litig.*, 576 F. Supp. 2d 570 (S.D.N.Y. 2008) explains:

> Plaintiffs allege that Defendants engaged in a common course of fraudulent conduct to artificially inflate the price of Telik common stock.  Proof of that common course of conduct relates to Defendants' liability as to all Class Members.  Because the central and predominant focus of the action is Defendants' alleged fraudulent conduct, each Class Member is similarly situated, and common questions predominate over individual questions.

*Id*. at 584; *Dietrich*, 192 F.R.D. at 128; *see also Darquea*, 2008 U.S. Dist. LEXIS 17747, at *13 (observing that "each class member, if they were to bring individual actions, would be required to prove the existence of the alleged activities of the Defendants in order to prove liability").  As such, common questions of law or fact predominate over individual issues.

- 15 -

Plaintiffs will establish "materiality" with generalized proof.  "[B]ecause 'the question of materiality . . . is an objective one, involving the significance of an omitted or misrepresented fact to a reasonable investor,' materiality can be proved through evidence common to the class."  *Amgen*, 133 S. Ct. at 1195-96 (quoting *TSC Indus., Inc. v. Northway, Inc.*, 426 U.S. 438, 445 (1976)); *see also In re SLM Corp. Sec. Litig.*, No. 08 Civ 1029 (WHP), 2012 U.S. Dist. LEXIS 8158, at *18 (S.D.N.Y. Jan. 24, 2012) (that defendants' misrepresented and omitted information affected profitability of the company as a whole "militates in favor of finding materiality").

The only individual issues likely to be raised in the litigation of this class action relate to the amount of damages sustained by each member of the Class and reliance.  However, courts have uniformly held that "potential issues related to differential damages does not preclude class certification."  *Alstom*, 253 F.R.D. at 276.  Instead, "[w]hen liability can be determined on a class-wide basis, individualized damage issues are not ordinarily a bar to class certification."  *In re WorldCom, Inc. Sec. Litig.*, 219 F.R.D. 267, 302 (S.D.N.Y. 2003).  Since Deutsche Bank shares traded in an efficient market, damages can be calculated using event studies and standard valuation models because the alleged misrepresentations and omissions impact all investors in the Class. Marek Decl. at 30.  Thus, damages in a securities fraud action, such as this, can be and routinely are determined on a class-wide basis. *See, e.g., Lapin v. Goldman Sachs & Co.*, 254 F.R.D. 168, 181 (S.D.N.Y. 2008) ("Although the damages, if any, owed to each individual class plaintiff who succeeds on his or her claims will vary, that fact does not defeat certification if the method of calculating damages is common to the class.").

Reliance has the potential to present individual issues and, even then, only if class members must prove reliance on defendants' false statements individually. *Halliburton*, 131 S. Ct. at 2184. But here, the entire putative class is entitled to a rebuttable presumption of reliance because

Plaintiffs can demonstrate that Deutsch Bank's securities traded in an efficient market.  *See Basic Inc. v. Levinson*, 485 U.S. 224, 246 (1988); *Amgen*, 133 S. Ct. at 1192-93 ("The fraud-on-the-market theory . . . facilitates class certification by recognizing a rebuttable presumption of classwide reliance on public, material misrepresentations when shares are traded in an efficient market.").  Where reliance is presumed, Plaintiffs need not prove awareness of any particular misstatement or omission. *Basic*, 485 U.S. at 247.  Instead, the security's market price reflects public information – including Deutsche Bank's false or misleading disclosures – and "[t]hen it can be assumed that an investor who buys or sells stock at the market price relies upon the statement."  *In re Salomon Analyst Metromedia Litig.*, 544 F.3d 474, 478 (2d Cir. 2008).

Courts in this Circuit apply the fraud-on-the-market doctrine's presumption of reliance where the company's securities traded in an efficient market.  *Lapin*, 254 F.R.D. at 182.  Here, because Deutsche Bank's stock traded on the NYSE, Plaintiffs are entitled to the presumption of market efficiency.  *See Teamsters Local 445 Freight Div. Pension Fund v. Bombardier, Inc.*, No. 05 Civ. 1898 (SAS), 2006 U.S. Dist. LEXIS 52991, at *43 (S.D.N.Y. Aug. 1, 2006), *aff'd*, 546 F.3d 196 (2d Cir. 2008) ("At the class certification stage, the securities' trading record may create certain rebuttable legal presumptions about market efficiency.  If, for example, a security is listed on the NYSE, AMEX, NASDAQ, or a similar national market, the market for that security is presumed to be efficient.").

In addition to assessing whether a stock traded on a national market, courts have adopted the *Cammer v. Bloom*, 711 F. Supp. 1264 (D.N.J. 1989) factors to evaluate market efficiency.  *In re Initial Pub. Offering Sec. Litig.*, 260 F.R.D. 81, 94 (S.D.N.Y. 2009) (*Cammer* factors "are frequently used to determine whether a market is efficient"); *see also In re Scor Holding (Switz.) AG Litig.*, 537 F. Supp. 2d 556, 574 (S.D.N.Y. 2008) ("To determine whether a market for a security is efficient,

- 17 -

courts often look to the five factors described in *Cammer v. Bloom . . . .*"); *Alstom*, 253 F.R.D. at 280 (same).   These factors are: (1) whether the stock trades at a high weekly volume; (2) whether securities analysts follow and report on the stock; (3) whether the stock has market makers and arbitrageurs; (4) whether the company is eligible to file an SEC registration Form S-3; and (5) whether there are empirical facts showing a cause-and-effect relationship between unexpected events or financial releases and an immediate response in the stock price.  *Cammer*, 711 F. Supp. at 1286-87.

The *Cammer* factors are satisfied here.  First, Deutsche Bank's stock traded at a high weekly volume during the Class Period – approximately 3,554,272 shares traded each week.  Marek Decl. at 11.  Second, at least 40 different investment banking and research firms continuously issued reports about Deutsche Bank during the Class Period.  *Id*. at 12.  In addition, a multitude of analysts and investors followed and provided coverage of Deutsche Bank during the Class Period.  *Id*.  The third *Cammer* factor – looking at the number of market makers – is more applicable to securities traded on the NASDAQ, but because Deutsche Bank shares traded on the NYSE, which is the world's most liquid cash equities exchange and conducts trades at sub-second speed, this factor is satisfied.  *Id*. at 13-14.  Fourth, Deutsche Bank is eligible to file the foreign-entity equivalent of a Form S-3, the Form F-3.  *Id*. at 14-15.  Finally, facts show a cause-and-effect relationship between certain unexpected corporate events or financial releases and an immediate response in Deutsche Bank's stock price.  *Id*. at 24, 29.

Deutsche Bank shares also satisfy three additional factors that courts sometimes consider in determining market efficiency: (1) the company's market capitalization; (2) the size of the bid/ask spread for the security; and (3) the degree to which the shares are widely held by the public rather than by company insiders.  *Teamsters*, 2006 U.S. Dist. LEXIS 52991, at *22-*24.  During the Class

- 18 -

Period, Deutsche Bank's market capitalization ranged from $1.3 to $7.8 billion.  Marek Decl. at 16.

The bid-ask spread for Deutsche Bank shares was approximately 0.10% of the closing price.  *Id*. at

20.  Deutsche Bank also had minimal insider ownership while approximately 200 large U.S.-based

institutional investors reported ownership of Deutsche Bank shares.  *Id*. at 20, 22.  Deutsche Bank's

Substock clearly traded on an efficient market during the relevant period, as demonstrated by the

Marek Declaration.  Thus, reliance may be presumed and Plaintiffs satisfy the "predominance"

requirement.

### 2.     A Class Action is Superior to the Other Available Methods for the Efficient Adjudication of This Controversy

Rule 23(b)(3) mandates that courts assess whether a "class action is superior to other

available methods for fairly and efficiently adjudicating the controversy."  Fed. R. Civ. P. 23(b)(3).

It sets forth the following factors to be considered by the Court when making its "superiority"

determination:

> (A)     the class members' interests in individually controlling the prosecution . . . of separate actions;
>
> (B)     the extent and nature of any litigation concerning the controversy already begun by . . . class members;
>
> (C)     the desirability . . . of concentrating the litigation of the claims in the particular forum; and
>
> (D)     the likely difficulties in managing a class action.

*Id*.

"'Courts have long recognized that [c]lass actions are a particularly appropriate and desirable

means to resolve claims based on the securities laws.'"  *NYSE Specialists*, 260 F.R.D. at 80 (quoting

*In re Veeco Instruments, Inc., Sec. Litig.*, 235 F.R.D. 220, 240 (S.D.N.Y. 2006)) (alteration in

original); *Dietrich*, 192 F.R.D. at 122 ("[T]he Second Circuit has 'traditionally favored the use of

class actions for the resolution of securities law claims, in particular those brought under Rule 10b-

5.'"). Securities actions easily satisfy the superiority requirement of Rule 23 because: (1) absent a

class action, defendants and the Court face potentially thousands of individual lawsuits, all arising

out of the same set of operative facts; (2) the resolution of common issues alleged in one class action

will result in efficient use of judicial resources and a single outcome that is binding on all defendants

and class members; (3) any administrative difficulties in handling potential individual issues that

may arise in this litigation are less burdensome than the problems which are likely to arise in

administering hundreds or thousands of separate actions; and (4) because of the prohibitive expense

of maintaining individual actions, denial of class certification here would effectively prevent

numerous individuals from asserting their claims against defendants and severely weaken the

protections provided to investors under the federal securities laws.  As a result, a class action is not

only superior, but perhaps the only feasible way to litigate the claims alleged in this action.  *See, e.g.*,

*Phillips Petroleum Co. v. Shutts*, 472 U.S. 797, 809 (1985) (class action mechanism allows plaintiffs

to pool claims that would otherwise be uneconomical to litigate individually).

      Thus, as the Second Circuit has recognized, a class action is superior to other available

methods – particularly duplicative individual lawsuits – for the fair and efficient adjudication of a

controversy affecting a large number of securities holders injured by violations of the federal

securities laws, *i.e.*, precisely this case:

> [A] class action [in a federal securities action] may well be the appropriate means for
> expeditious litigation of the issues, because a large number of individuals may have
> been injured, although no one person may have been damaged to a degree which
> would have induced him to institute litigation solely on his own behalf.

*Green v. Wolf Corp.*, 406 F.2d 291, 296 (2d Cir. 1968); *see also NYSE Specialists*, 260 F.R.D. at 80

("securities cases 'easily satisfy the superiority requirement of Rule 23'") (quoting *In re Blech Sec.*

*Litig.*, 187 F.R.D. 97, 107 (S.D.N.Y. 1999)).  The litigation of this controversy as a class action will

adequately protect the interests of the class members.  In contrast, the alternative to a class action –

thousands of separate individual actions – offers no practical recourse for most class members facing a well-financed multi-national corporate adversary such as Deutsche Bank.

The nationwide geographical dispersion of the class members, based on Deutsche Bank's listing on a national exchange, makes it efficient to concentrate litigation in a single forum. *Public Emps.*, 277 F.R.D. at 121 (finding for a securities fraud class action that "it is clearly desirable to concentrate this litigation in this forum" to "'eliminat[e] the risk of inconsistent adjudications and promot[e] the fair and efficient use of the judicial system, and [because] the Southern District of New York is well known to have expertise in securities law.'").

Plaintiffs and Lead Counsel do not anticipate any significant management issues resulting from class treatment of this action.  In any event, theoretical management problems are not, standing alone, grounds for denying this motion. *In re NASDAQ Market-Makers Antitrust Litig.*, 169 F.R.D. 493, 528 (S.D.N.Y. 1996) ("Courts are generally loath to deny class certification based on speculative problems with case management.").

## IV.   THE COURT SHOULD ALLOW LOCAL 90 TO PARTICIPATE AS A PLAINTIFF IN THIS MATTER

Local 90 has participated in this action from the beginning, initially serving as the named plaintiff in this action.[5]  *See* Dkt. No. 1.  Though Local 90 was not named in the Complaint, it continues to be named in the caption.  More importantly, its inclusion as a class representative neither contravenes the Private Securities Litigation Reform Act of 1995 ("PSLRA") nor the Federal Rules.  While the PSLRA contains provisions relating to the appointment of a lead plaintiff, the Second Circuit held that this does not alter the Rule 23 for appointing a class representative. *Hevesi*,

---

[5]   Local 90 has already produced documents to Defendants supporting its appointment as a class representative.

336 F.3d at 83 ("[T]here is no reason to believe that the PSLRA altered the preexisting standard by which class representatives are evaluated under Rule 23."). Specifically, "the PSLRA does not in any way prohibit the addition of named plaintiffs to aid the lead plaintiff in representing a class." *Id.*; *In re Oxford Health Plans, Inc. Sec. Litig.*, 191 F.R.D. 369, 380-81 (S.D.N.Y. 2000) ("The Court believes on reflection that it probably has the power to designate a Class Representative under the Rule 23 who is not a Lead Plaintiff, simply because there is nothing in the statute which prevents it."). As shown above, Local 90, who purchased Deutsche Bank shares during the Class Period and as a result was damaged when Deutsche Bank's fraud was revealed, meets the requirements to serve as a class representative. *See also* Price Decl., Ex. 5.

As an alternative to recognition as a plaintiff and class representative under Rule 23, Local 90 could also be rejoined to the action pursuant to either Rule 20 of the Federal Rules of Civil Procedure, allowing "[p]ermissive joinder of parties" or Rule 15, providing that the court shall grant leave to amend a complaint "when justice so requires." *Koch v. Dwyer*, 98 Civ. 5519 (RPP), 2001 U.S. Dist. LEXIS 4085, at *19 (S.D.N.Y. Mar. 22, 2001) ("liberality in granting leave to amend also applies to amending a complaint to add new parties"). Reinstating Local 90 as a plaintiff will cause no delay to the case nor is it prejudicial to the Defendants. Local 90 should be recognized as a plaintiff and appointed a class representative in this action.

851657_1

## V.     CONCLUSION

For the reasons set forth above, Plaintiffs respectfully request that the Court grant their

Motion for Class Certification and, in doing so, certify the Class defined herein, designate Plaintiffs

as Class Representatives, appoint Robbins Geller as Class Counsel and recognize Local 90 as a

plaintiff party in this action.

DATED: July 1, 2013                    ROBBINS GELLER RUDMAN
                                         & DOWD LLP
                                       JOHN K. GRANT


                                              s/ John K. Grant
                                       ———————————————————
                                            JOHN K. GRANT

                                       Post Montgomery Center
                                       One Montgomery Street, Suite 1800
                                       San Francisco, CA  94104
                                       Telephone:  415/288-4545
                                       415/288-4534 (fax)

                                       ROBBINS GELLER RUDMAN
                                         & DOWD LLP
                                       SAMUEL H. RUDMAN
                                       DAVID A. ROSENFELD
                                       58 South Service Road, Suite 200
                                       Melville, NY  11747
                                       Telephone:  631/367-7100
                                       631/367-1173 (fax)

- 23 -

851657_1

ROBBINS GELLER RUDMAN
  & DOWD LLP
ASHLEY M. PRICE
655 West Broadway, Suite 1900
San Diego, CA  92101
Telephone:  619/231-1058
619/231-7423 (fax)

Lead Counsel for Plaintiff

LAW OFFICE OF ALFRED G.
  YATES, JR., P.C.
ALFRED G. YATES, JR.
519 Allegheny Building
429 Forbes Avenue
Pittsburgh, PA  15219
Telephone:  412/391-5164
412/471-1033 (fax)

Additional Counsel for Plaintiff

851657_1

<u>CERTIFICATE OF SERVICE</u>

I hereby certify that on July 1, 2013, I authorized the electronic filing of the foregoing with

the Clerk of the Court using the CM/ECF system which will send notification of such filing to the

e-mail addresses denoted on the attached Electronic Mail Notice List, and I hereby certify that I

caused to be mailed the foregoing document or paper via the United States Postal Service to the non-

CM/ECF participants indicated on the attached Manual Notice List.

I certify under penalty of perjury under the laws of the United States of America that the

foregoing is true and correct.  Executed on July 1, 2013.


                                                     s/ John K. Grant
                                                  JOHN K. GRANT

ROBBINS GELLER RUDMAN
    & DOWD LLP
Post Montgomery Center
One Montgomery Street, Suite 1800
San Francisco, CA  94104
Telephone:  415/288-4545
415/288-4534 (fax)
E-mail: johnkg@rgrdlaw.com

851657_1

# Mailing Information for a Case 1:11-cv-04209-KBF

## Electronic Mail Notice List

The following are those who are currently on the list to receive e-mail notices for this case.

- **Charles Alan Gilman**
  cgilman@cahill.com

- **John K. Grant**
  johnkg@rgrdlaw.com,ptiffith@rgrdlaw.com,jdecena@rgrdlaw.com,e_file_sf@rgrdlaw.com

- **David George Januszewski**
  djanuszewski@cahill.com

- **Ashley M. Price**
  APrice@rgrdlaw.com

- **Darren J. Robbins**
  e_file_sd@rgrdlaw.com

- **David Avi Rosenfeld**
  drosenfeld@rgrdlaw.com,e_file_ny@rgrdlaw.com,johnkg@rgrdlaw.com,e_file_sd@rgrdlaw.com

- **Samuel Howard Rudman**
  srudman@rgrdlaw.com,e_file_ny@rgrdlaw.com,mblasy@rgrdlaw.com,e_file_sd@rgrdlaw.com

- **Gerald Louis Rutledge**
  yateslaw@aol.com

- **Curtis Victor Trinko**
  ctrinko@gmail.com

- **Alfred Glenn Yates**
  yateslaw@aol.com

## Manual Notice List

The following is the list of attorneys who are **not** on the list to receive e-mail notices for this case (who therefore require manual noticing). You may wish to use your mouse to select and copy this list into your word processing program in order to create notices or labels for these recipients.

**Gregory Campora**
ROBERT M. CHEVERIE & ASSOCIATES
Commerce Center One
333 E. River Drive, Suite 101
East Hartford, CT 06108

**David C. Walton**
Robbins Geller Rudman & Dowd LLP (SANDIEGO)
655 West  Broadway
Suite  1900
San Diego, CA 92101