UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| IBEW LOCAL 90 PENSION FUND, on behalf of itself and all others similarly situated, | |
| Plaintiffs, | Case No. 11-cv-4209 (KBF) (ECF Case) |
| vs. | |
| DEUTSCHE BANK AG, *et al.*, | |
| Defendants. | |

## DEFENDANTS' MEMORANDUM OF LAW IN OPPOSITION TO LEAD PLAINTIFFS' AND IBEW LOCAL 90 PENSION FUND'S MOTION FOR CLASS CERTIFICATION AND TO INCLUDE IBEW LOCAL 90 PENSION FUND AS A NAMED PLAINTIFF

**CAHILL GORDON & REINDEL** LLP
Charles A. Gilman
David G. Januszewski
Brian Barrett
80 Pine Street
New York, New York 10005
(212) 701-3000
(212) 269-5420 (fax)
*Attorneys for Defendants*

August 29, 2013

# TABLE OF CONTENTS

**Page**

TABLE OF AUTHORITIES .................................................................................................. ii

PRELIMINARY STATEMENT ............................................................................................. 1

ARGUMENT ........................................................................................................................... 7

I.  PLAINTIFFS MUST DEMONSTRATE BY A PREPONDERANCE OF THE
EVIDENCE THAT ALL ELEMENTS OF RULE 23 ARE SATISFIED.......................... 7

II.  BECAUSE PLAINTIFFS HAVE NOT ESTABLISHED THAT THE FRAUD-
ON-THE-MARKET PRESUMPTION OF RELIANCE IS JUSTIFIED IN THIS
ACTION, INDIVIDUAL QUESTIONS PREDOMINATE................................................. 8

III.  BECAUSE DEFENDANTS MUST BE AFFORDED A REASONABLE
OPPORTUNITY TO REBUT ANY CLAIM OF RELIANCE, THIS ACTION
FAILS TO MEET THE SUPERIORITY REQUIREMENT OF RULE 23(B)(3) ........... 12

IV.  EACH OF THE FOUR PROPOSED CLASS REPRESENTATIVES IS
SUBJECT TO UNIQUE DEFENSES THAT PRECLUDE CLASS
CERTIFICATION ............................................................................................................. 16

    A.  The Proposed Class Representatives Are "In-and-Out" Traders........................... 16

    B.  The Proposed Class Representatives Are Post-Disclosure Purchasers................. 18

V.  THE PROPOSED CLASS REPRESENTATIVES ARE NEITHER TYPICAL
NOR ADEQUATE ............................................................................................................ 19

    A.  Plaintiffs Either Refuse or Are Unable to Provide Proper Discovery. ................ 19

    B.  The Christian Values-Based Steward Funds Are Atypical................................... 20

    C.  This Is Inappropriately Lawyer-Driven Litigation ............................................. 21

CONCLUSION....................................................................................................................... 25

# TABLE OF AUTHORITIES

Page

**Cases**

*Aguilar* v. *Immigration and Customs Enforcement Division of United States Department of Homeland Security,*
2012 WL 1344417 (S.D.N.Y. Apr. 16, 2012)..........................................................................7n

*Amchem Products, Inc.* v. *Windsor,*
521 U.S. 591 (1997)..............................................................................................................8, 15

*In re American International Group, Inc. Securities Litigation,*
689 F.3d 229 (2d Cir. 2012)..........................................................................................8, 12, 14

*Amgen Inc.* v. *Connecticut Retirement Plans and Trust Funds,*
133 S. Ct. 1184 (2013)....................................................................................................2, 7n, 8

*ATSI Communications, Inc.* v. *Shaar Fund, Ltd.,*
493 F.3d 87 (2d Cir. 2007).......................................................................................................11

*Basic Inc.* v. *Levinson,*
485 U.S. 224 (1988)..........................................................................................2, 8n, 14, 15, 15n

*Board of Trustees IBEW-NECA Defined Contribution Plan* v. *Bank of New York Mellon Corp.,*
287 F.R.D. 216 (S.D.N.Y. 2012) ...........................................................................................13n

*Brown* v. *Kelly,*
609 F.3d 467 (2d Cir. 2010).....................................................................................................20

*Califano* v. *Yamasaki,*
442 U.S. 682 (1979)....................................................................................................................7

*Cammer* v. *Bloom,*
711 F. Supp. 1264 (D.N.J. 1989) .............................................................................................11

*Carrera* v. *Bayer Corp.,*
2013 WL 4437225 (3d Cir. Aug. 21, 2013) .............................................................................1n

*City of Livonia Employees' Retirement System* v. *Wyeth,*
284 F.R.D. 173 (S.D.N.Y 2012) ..............................................................................................22

*City of Pontiac General Employees' Retirement System* v. *Lockheed Martin Corp.,*
844 F. Supp. 2d 498 (S.D.N.Y. 2012) .....................................................................................21

*City of Roseville Employees' Retirement System* v. *EnergySolutions, Inc.,*
814 F. Supp. 2d 395 (S.D.N.Y. 2011) ....................................................................................10n

*Cohen* v. *Beneficial Industrial Loan Corp.*,
337 U.S. 541 (1949)................................................................................................19

*Comcast Corp.* v. *Behrend*,
133 S. Ct. 1426 (2013)....................................................................................2, 5, 7, 7n

*Daubert* v. *Merrell Dow Pharmaceuticals, Inc.*,
509 U.S. 579 (1993).................................................................................................3n

*Delshah Group LLC* v. *Javeri*,
2013 WL 2322488 (S.D.N.Y. May 28, 2013) ..........................................................10n

*Dukes* v. *Wal-Mart Stores, Inc.*,
222 F.R.D. 137 (N.D. Cal. 2004), *aff'd*, 509 F.3d 1168 (9th Cir. 2007), *aff'd en banc*, 603
F.3d 571 (9th Cir. 2010), *rev'd*, 131 S. Ct. 2541 (2011) ........................................12

*Duncan* v. *Jaudon*,
82 U.S. 165 (1872)....................................................................................................6

*Eisen* v. *Carlisle & Jacquelin*,
417 U.S. 156 (1974)................................................................................................7n

*Erica P. John Fund, Inc.* v. *Halliburton Co.*,
131 S.Ct. 2179 (2011).............................................................................................2, 8

*Farrar* v. *Churchill*,
135 U.S. 609 (1890)................................................................................................6n

*In re Federal Home Loan Mortgage Corp. (Freddie Mac) Securities Litigation*,
281 F.R.D. 174 (S.D.N.Y. 2012) ......................................................................8, 8n, 11

*In re Flag Telecom Holdings, Ltd. Securities Litigation*,
574 F.3d 29 (2d Cir. 2009).................................................................................17, 18n

*Freidus* v. *ING Groep N.V.*,
736 F. Supp. 2d 816 (S.D.N.Y. 2010).......................................................................10n

*GAMCO Investors, Inc.* v. *Vivendi, S.A.*,
2013 WL 765122 (S.D.N.Y. Feb. 28, 2013).................................................................12

*Gary Plastic Packaging Corp.* v. *Merrill Lynch, Pierce, Fenner & Smith, Inc.*,
903 F.2d 176 (2d Cir. 1990)......................................................................................18

*In re General Electric Securities Litigation*,
2009 WL 2259502 (S.D.N.Y. July 29, 2009) ........................................................22, 24

*General Telephone Co.* v. *Falcon*,
457 U.S. 147 (1982)..................................................................................................2

*George* v. *China Automotive Systems, Inc.*,
　2012 WL 3205062 (S.D.N.Y. August 8, 2012) .............................................. 10n

*George* v. *China Automotive Systems, Inc.*,
　2013 WL 3357170 (S.D.N.Y. July 3, 2013) ............................................... *passim*

*Green* v. *Wolf Corp.*,
　406 F.2d 291 (2d Cir. 1968) ......................................................................... 7n

*Greenspan* v. *Brassler*,
　78 F.R.D. 130 (S.D.N.Y. 1978) ..................................................................... 19

*IBEW Local 90 Pension Fund* v. *Deutsche Bank AG*,
　2013 WL 1223844 (S.D.N.Y. Mar. 27, 2013) ................................................ 1n

*In re Initial Public Offering Securities Litigation*,
　471 F.3d 24 (2d Cir. 2006) ............................................................................. 3

*Iron Workers Local No. 25 Pension Fund* v. *Credit–Based Asset Servicing and Securitization*,
　*LLC*,
　616 F. Supp. 2d 461 (S.D.N.Y. 2009) ................................................ 21, 22, 24

*Kline* v. *Wolf*,
　88 F.R.D. 696 (S.D.N.Y. 1981), *aff'd*, 702 F.2d 400 (2d Cir. 1983) ............... 19

*In re Locust Building Co.*,
　299 F. 756 (2d Cir. 1924) .............................................................................. 6n

*In re Monster Worldwide, Inc. Securities Litigation*,
　251 F.R.D. 132 (S.D.N.Y. 2008) ................................................................... 22

*Norman* v. *Arcs Equities Corp.*,
　72 F.R.D. 502 (S.D.N.Y. 1976) ..................................................................... 19

*Palmer Kane LLC* v. *Scholastic Corp.*,
　2012 WL 2952898 (S.D.N.Y. July 16, 2012) .................................................. 7

*Philip Morris USA Inc.* v. *Scott*,
　131 S. Ct. 1 (2010) ...................................................................................... 15n

*In re Polymedica Corporation Securities Litigation*,
　453 F. Supp. 2d 260 (D. Mass. 2006) ........................................................... 11

*In re Rail Freight Fuel Surcharge Antitrust Litigation*,
　2013 WL 4038561 (D.C. Cir. Aug. 9, 2013) ................................................... 5

*In re Refco Securities Litigation*,
　2013 WL 4078410 (S.D.N.Y. Aug. 2, 2013) ................................................ 18n

*Rocco* v. *Nam Tai Electronics, Inc.*,
  245 F.R.D. 131 (S.D.N.Y. 2007) ........................................................................................19

*Saylor* v. *Lindsley*,
  456 F.2d 896 (2d Cir. 1972).............................................................................................22

*Schaffner* v. *Chemical Bank*,
  339 F. Supp. 329 (S.D.N.Y. 1972) .....................................................................................2

*Schreyer* v. *Platt*,
  134 U.S. 405 (1890)........................................................................................................6n

*Schuler* v. *NIVS Intellimedia Technology Group, Inc.*,
  2013 WL 944777 (S.D.N.Y. Mar. 12, 2013) ...................................................................18n

*Shayler* v. *Midtown Investigations, Ltd.*,
  2013 WL 772818 (S.D.N.Y. Feb. 27, 2013) ...................................................................7, 7n

*Simington* v. *Lease Finance Group, LLC*,
  2012 WL 6681735 (S.D.N.Y. Dec. 14, 2012) ...................................................................7n

*In re Smart Technologies, Inc. Shareholder Litigation*,
  2013 WL 139559 (S.D.N.Y. Jan. 11, 2013) ...........................................................1n, 7n, 17

*Spagnola* v. *Chubb Corp.*,
  264 F.R.D. 76 (S.D.N.Y. 2010) ........................................................................................13n

*Stallo* v. *Wagner*,
  233 F. 379 (2d Cir. 1916).................................................................................................6n

*Stoneridge Investment Partners, LLC* v. *Scientific-Atlanta, Inc.*,
  552 U.S. 148 (2008)...........................................................................................................2

*Teamsters Local 445 Freight Div. Pension Fund* v. *Bombardier, Inc.*,
  546 F.3d 196 (2d Cir. 2008).....................................................................................7, 8n, 12

*Union Switch & Signal Co.* v. *Day*,
  16 F.2d 4 (2d Cir. 1926)...................................................................................................6n

*Valentini* v. *Citigroup, Inc.*,
  837 F. Supp. 2d 304 (S.D.N.Y. 2011).............................................................................10n

*Wal-Mart Stores, Inc.* v. *Dukes*,
  131 S. Ct. 2541 (2011) ............................................................................................. *passim*

*Wu* v. *Pearson Education Inc.*,
  2012 WL 6681701 (S.D.N.Y. Dec. 21, 2012) ...................................................................7n

**Constitutional Provisions**

U.S. Const. amend. VII ............................................................................................15

U.S. Const. amend. XIV ............................................................................14, 15, 15n

**Statutes**

15 U.S.C. § 78u-4, *et seq.* (2010) ........................................................................21, 24

**Regulations**

Rule 10b-5, 17 C.F.R. § 240.10b-5 (2013) ...........................................................2, 8, 14

**Rules**

Fed. R. Civ. P.

23 ..................................................................................................................... *passim*

23(a) ....................................................................................................................1, 2

23(b)(3) ........................................................................................................1, 12, 15

26(a) .....................................................................................................................20n

26(a)(1)(A)(iii) ....................................................................................................5, 20

Fed. R. Evid. 702 .....................................................................................................3n

Local Civil Rule 33.3(a) .......................................................................................5, 20

**Regulatory Orders**

*Emergency Order Pursuant to Section 12(k)(2) of the Securities Exchange Act of 1934 Taking Temporary Action to Respond to Market Developments*, SEC Release No. 58166 (July 15, 2008) ...........................................................................................................10n

*Order Extending Emergency Order*, SEC Release No. 58248 (July 29, 2008).........................10n

*Emergency Order Pursuant to Section 12(k)(2) of the Securities Exchange Act of 1934 Taking Temporary Action to Respond to Market Developments*, SEC Release No. 58592 (Sept. 18, 2008) ...........................................................................................................10n

*General Decree of BaFin on Short Selling* (Sept. 19, 2008) ......................................................10n

**Other Authorities**

Alessandro Beber and Marco Pagano, *Short-Selling Bans Around the World: Evidence from the 2007-09 Crisis*, Journal of Finance, Vol. LXVIII, No. 1, at Table I (Feb. 2013)..........10n, 11n

Fed. R. Civ. P. 23(b)(3) Advisory Committee's Note (1966 Amendment)...................................15

Fed. R. Civ. P. 23(h) Advisory Committee's Note (2003) .........................................................24

*Iron Workers Local No. 25 Pension Fund* v. *Credit–Based Asset Servicing and Securitization, LLC,* No. 08-cv-10841 (S.D.N.Y.) (Transcript of Proceedings Apr. 1, 2009) .....................22n

Rachelle Younglai, *SEC Chief has Regrets Over Short-Selling Ban*, Reuters (Dec. 31, 2008), *available at* http://www.reuters.com/article/2008/12/31/us-sec-cox-interview-idUSTRE4BU3FL20081231................................................................................................10n

Deutsche Bank AG (Deutsche Bank) and the Individual Defendants submit this memorandum in opposition to Plaintiffs' motion for class action certification.

## PRELIMINARY STATEMENT

Plaintiffs seek certification under Fed. Civ. P. 23(a) and 23(b)(3) of a class defined as "[a]ll purchasers of Deutsche Bank AG . . . ordinary shares on the New York Stock Exchange ('NYSE') . . . and all purchasers of Deutsche Bank ordinary shares in any domestic transaction from January 3, 2007, through January 16, 2009 . . . ." Pls. Mem. at 1 (Doc. 52).[1]

Plaintiffs ignore: (i) that during the proposed class period, between 97.2% and 97.9% of all Deutsche Bank shareholders resided in Germany; (ii) that only 0.3-0.4% of all Deutsche Bank shareholders resided in the United States; (iii) that on an average trading day over 92% of the trading of Deutsche Bank global registered shares ("GRSs," referred to by Plaintiffs as "ordinary shares") took place in Germany; (iv) that, even during overlapping trading hours, Germany, not the United States, is the dominant trading market for price discovery for Deutsche Bank GRSs, while the NYSE is a lagging satellite market in terms of price discovery; (v) that even in the United States the majority of daily trading of Deutsche Bank GRSs is not on the NYSE; and (vi) that Plaintiffs' market efficiency expert made no study of the German stock market, does not know what Plaintiffs mean by "in any domestic transaction," does not know on what market(s) Plaintiffs acquired their Deutsche Bank GRSs, and made no study of and has no opinion with respect to any market, domestic or foreign, other than the NYSE.[2]

---

[1] The Court has excluded from the proposed class all persons who purchased ordinary shares of Deutsche Bank outside the United States. *IBEW Local 90 Pension Fund* v. *Deutsche Bank AG*, 2013 WL 1223844, at *2 n.2 (S.D.N.Y. Mar. 27, 2013) (Forrest, J.); *see also In re Smart Technologies, Inc. Shareholder Litigation*, 2013 WL 139559, at *4-*6 (S.D.N.Y. Jan. 11, 2013) (Forrest, J.) (purchasers outside the U.S. do not have a viable cause of action under the Securities Act).

[2] Plaintiffs do not explain what they mean by that aspect of their proposed class definition referring to "in any domestic transaction." Their market efficiency expert does not know what it means, and Plaintiffs do not propose how the members of a class so defined can be identified. Class ascertainability is an essential prerequisite to a class action, and it is Plaintiffs' burden to demonstrate how the members of the proposed class will be identified. *See Carrera* v. *Bayer Corp.*, 2013 WL 4437225, at *3, *8 (3d Cir. Aug. 21, 2013) (vacating class certification where Plaintiffs failed to present reasonable means of identifying proposed class members; declining to permit class membership to be based on plaintiffs, "say so").

The Supreme Court's recent decisions in *Comcast Corp.* v. *Behrend*, 133 S. Ct. 1426 (2013), *Amgen Inc.* v. *Connecticut Retirement Plans and Trust Funds*, 133 S. Ct. 1184 (2013), and *Wal-Mart Stores, Inc.* v. *Dukes*, 131 S. Ct. 2541 (2011), have given meaning to Judge Pollack's observations in *Schaffner* v. *Chemical Bank*, 339 F. Supp. 329 (S.D.N.Y. 1972) that: "[i]f Rule 23 as applied can principally result only in *in terrorem* accomplishments as a practical solution to gargantuan litigation, it is high time for needed revision along lines of practicality and the facts of litigation life." *Id.* at 337. Class certification is a "crucial inflection point" in securities litigation that requires "careful analysis of the factors under Rule 23." *George* v. *China Automotive Systems, Inc.*, 2013 WL 3357170, at *1 (S.D.N.Y. July 3, 2013) (Forrest, J.). Courts may no longer take a wait-and-see approach when deciding whether or not to certify a class, but instead must undertake a "'rigorous analysis'" to determine that "'the prerequisites of Rule 23(a) have been satisfied.'" *Wal-Mart*, 131 S. Ct. at 2551 (quoting *General Telephone Co.* v. *Falcon*, 457 U.S. 147, 161 (1982)); *see Comcast*, 133 S. Ct. at 1432.

This is a fraud action. "'Reliance by the plaintiff upon the defendant's deceptive acts is an essential element of the § 10(b) private cause of action' . . . because proof of reliance ensures that there is a proper 'connection between a defendant's misrepresentation and a plaintiff's injury.'" *Erica P. John Fund, Inc.* v. *Halliburton Co.*, 131 S. Ct. 2179, 2184 (2011) (quoting *Stoneridge Investment Partners, LLC* v. *Scientific-Atlanta, Inc.*, 552 U.S. 148, 159 (2008) and *Basic Inc.* v. *Levinson*, 485 U.S. 224, 243 (1988)). Plaintiffs do not allege reliance on any of Defendants' statements, and instead seek to proceed under the fraud-on-the-market theory.

"'Absent the fraud-on-the-market theory, the requirement that Rule 10b-5 plaintiffs establish reliance would ordinarily preclude certification of a class action seeking money damages because individual reliance issues would overwhelm questions common to the class.'" *George*, 2013 WL 3357170, at *3 (quoting *Amgen*, 133 S. Ct. at 1193). Plaintiffs must "establish by a preponderance of the evidence" an efficient market as the predicate for the fraud-on-the-market theory. *George*, 2013 WL 3357170, at *7-*8 (citing *Basic*, 485 U.S. at 241-42); *see also Halliburton*, 131 S. Ct. at 2185 ("plaintiffs must demonstrate . . . that the stock traded in

an efficient market"); *In re Initial Public Offering Securities Litigation*, 471 F.3d 24, 42 (2d Cir. 2006) (rejecting argument that plaintiffs need only make "some showing" of market efficiency).

In an effort to carry their burden of showing market efficiency, Plaintiffs have offered the Declaration of Mr. Michael A. Marek – nothing else. But this Declaration, copied in large part from other lawsuits, (i) is the work of someone not qualified as an expert on the topic of market efficiency, (ii) applies unreliable methodologies and (iii) returns results that are inconsistent with a conclusion of market efficiency.[3] Because Plaintiffs have not satisfied their burden of demonstrating that the Deutsche Bank GRSs traded in an efficient market, individual questions of reliance predominate in this action. *See George*, 2013 WL 3357170, at *3.

As to the other requirements of Rule 23, Plaintiffs have filed nothing more than a boilerplate motion. The short declarations of the proposed class representatives are meaningless, and provide no basis on which the Court can, as it must, determine whether the proposed class action representatives satisfy the typicality and adequacy requirements. Each of the proposed class representatives is both an "in-and-out" trader and post-disclosure purchaser, for which they are "subject to unique defenses which threaten to become the focus of the litigation." *Id.* at *5. In addition, the testimony of Plaintiffs' Rule 30(b)(6) representatives establishes:

**The Steward Funds.** Plaintiffs Steward Global Equity Income Fund ("Steward Global") and Steward International Enhanced Index Fund ("Steward International" and together the "Steward Funds") are faith-based funds controlled by the Assemblies of God Church that invest consistent with what the Church believes to be "Biblical principles and a Christian lifestyle." The main driver of their investments is "Christian values" and they do not invest

---

[3] Defendants are filing herewith a motion pursuant to Fed. R. Evid. 702 and *Daubert* v. *Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579 (1993), to exclude all testimony and reports from Mr. Marek. As detailed therein, courts across the country have excluded Mr. Marek's testimony in securities class actions as "deficient," as "fatally flawed" and as "inherently unreliable." The same is true here. Mr. Marek is not qualified and his work is seriously flawed and provides no reliable basis for the opinion he offers. Defendants' *Daubert* motion is supported by declarations from Professor Joseph A. Grundfest of Stanford University and Professor Paul A. Gompers of Harvard University, which are also incorporated herein in opposition to Plaintiffs' motion for class action certification.

in anything they believe to be associated in any way with abortion, pornography, tobacco, alcohol or gambling.  *See* Wolf Dep. (Ex. A),[4] at 94:11-95:8:

> "Q. The Steward Funds are absolutely anti-abortion.
>
> "A. It's anti-abortion.  That's one of their criteria.
>
> "Q. And they will not invest knowingly in an enterprise that they in any way, shape or form associate with abortion.
>
> "A. That's fairly accurate. . . .
>
> "Q. So this is a seriously bright line.
>
> "A. Yeah. . . . It's either you're in it or you're not.
>
> "Q. You're either living a Christian lifestyle or you're not.
>
> "A. Basically, yes."

Appointing the Steward Funds as class representatives would risk polarizing any jury assembled for the trial of this action and distract from a trial of the merits.  Additionally:

- Steward Global did not even exist during the first fifteen months of the proposed class period, and cannot possibly be an adequate representative of those who traded Deutsche Bank GRSs during that time period;

- Steward International took an investment position in Deutsche Bank GRSs before the start of the proposed class period – *i.e.*, before any alleged fraud – and all of its purchases (and sales) during the class period were solely to allocate the flow of investor funds to maintain its indexed portfolio, without regard to any news about Deutsche Bank or the price of its GRSs; and

- Both Steward Funds were effectively required to own Deutsche Bank GRSs throughout the class period because of the models on which they were based, and no qualitative analysis concerning Deutsche Bank or its GRSs was ever performed during the class period.

**Building Trades and IBEW Local 90.**  Plaintiffs Building Trades United Pension Fund ("Building Trades") and IBEW Local 90 Pension Fund ("IBEW Local 90") are multi-employer Taft-Hartley union pension funds.  Building Trades has a few employees, IBEW Local 90 has none.  Their trustees consciously avoid any knowledge of when, why or what

---

[4] Citations to (Ex. A, B, C) are to the exhibits to the Declaration of Brian Barrett submitted herewith.  Citations to (Ex. 1, 2, 3) are to the exhibits to the Declaration of Roxana G. Labatt, submitted with Defendants' *Daubert* motion.

securities are being purchased, sold or held for their accounts so that they can avoid fiduciary liability under ERISA. The only knowledge they have concerning investments is from after-the-fact receipt of quarterly statements. "I know nothing" is not an appropriate response for a proposed class representative – especially where, as here, it is the end of the road. The Rule 30(b)(6) representatives of both Plaintiffs testified that only their outside investment advisor would know why it purchased what it purchased, and why it sold what it sold, when it did whatever it did. For both, that was AllianceBernstein LP. But both Plaintiffs "fired" AllianceBernstein, and Building Trades went the next step and "eliminated" (*i.e.*, shredded) its investment files. The story ends there because, despite being served with a subpoena in this action, AllianceBernstein has refused to appear for deposition, stating that it has no employees who know anything about the trading in Plaintiffs' accounts.[5]

"[A]t the class-certification stage (as at trial), any model supporting a 'plaintiff's damages case must be consistent with its liability case' . . . [a]nd for purposes of Rule 23, courts must conduct a 'rigorous analysis' to determine whether that is so.'" *Comcast*, 133 S. Ct. at 1433; *see In re Rail Freight Fuel Surcharge Antitrust Litigation*, 2013 WL 4038561, at *1, *7-*8 (D.C. Cir. Aug. 9, 2013) (granting interlocutory review and vacating class action certification because of failure rigorously to analyze how damages could be tried on a class-wide basis). But here Plaintiffs have refused to provide mandatory Rule 26(a)(1)(A)(iii) disclosure of damages, and have refused to respond to a Local Civil Rule 33.3(a) damage interrogatory.[6] In addition, Plaintiffs have not presented any class-wide damage model, and their expert has admitted that it is possible that a class-wide damage model "can't be created."

"Q. Is it fair to say that you are not expressing any opinion as to damages?
"A. That is correct.

---

[5] IBEW Local 90 was not appointed as a Lead Plaintiff, and was thereafter dropped as a named plaintiff. It is not referred to as a party to this action in the Amended Complaint. That IBEW Local 90 should now be hauled back into this action and presented by way of special motion as a named plaintiff and proposed class representative speaks volumes as to the deficiencies of the three Lead Plaintiffs.

[6] *See* Barrett Decl. Ex. P, at 8, Ex. Q, at 3, 5, 7, Ex. R, at 3, 5, 7, and Ex. S, at 3, 5, 7.

> "Q.  Is it fair to say, sir, that you have not constructed any damage model for use in this case?
>
> "A.  That is fair to say.
>
> "Q.  Is it fair to say that you have not considered the issue of any damage model for use in this case?
>
> "A.  That is fair to say."

Marek Dep. (Ex. 1), at 22:23-23:9.

> "Q.  You testified before – before lunch that you've done no work to create a damage model in this case, correct?
>
> "A.  Correct.
>
> "Q.  I take it then that you have no opinion as to how damages can be measured on a class-wide basis using a commonly-accepted methodology because you haven't thought about it yet.
>
> "A.  I included an opinion that I believed that it would be possible to do.  I have not included any opinion on exactly how to do it and what it would show.
>
> "Q.  And you haven't been asked to do it.
>
> "A.  No, I have not."

*Id.* at 214:5-20.

> "Q.  And while it's 'possible' that was your word, while it's possible, that such a model could be created, you haven't created one.
>
> "A.  No, I have not.
>
> "Q.  It's also possible such a model can't be created.
>
> "A.  That could be possible."

*Id.* at 215:13-20; *see also id.* at 260:13-20.

"Given the enormous ramifications of certifying a class—turning potential losses from relatively small amounts into potentially massive exposure—careful analysis of the factors under Rule 23 is required.  This rigorous analysis is further required by Supreme Court precedent as well as by a judiciary calibrated to be fair and just." *George*, 2013 WL 3357170, at *1. Defendants are entitled to the well-settled presumption "in favor of honesty and against fraud." *Duncan* v. *Jaudon*, 82 U.S. 165, 170 (1872).[7]  As we demonstrate below, Plaintiffs' motion for class action certification does not withstand analysis, and should be denied.

---

[7] "Fraud is never presumed."  *Farrar* v. *Churchill*, 135 U.S. 609, 615 (1890); *see Schreyer* v. *Platt*, 134 U.S. 405, 416 (1890) ("the court never presumes fraud"); *Union Switch & Signal Co.* v. *Day*, 16 F.2d 4, 6 (2d Cir. 1926) ("fraud is never presumed"); *In re Locust Building Co.*, 299 F. 756, 766 (2d Cir. 1924) ("[f]raud is never presumed"); *Stallo* v. *Wagner*, 233 F. 379, 382 (2d Cir. 1916) (same).

## ARGUMENT

### I.   PLAINTIFFS MUST DEMONSTRATE BY A PREPONDERANCE OF THE EVIDENCE THAT ALL ELEMENTS OF RULE 23 ARE SATISFIED

"The class action is 'an exception to the usual rule that litigation is conducted by and on behalf of the individual named parties only.'" *Wal-Mart*, 131 S. Ct. at 2550 (quoting *Califano* v. *Yamasaki*, 442 U.S. 682, 700-01 (1979)). "To come within the exception, a party seeking to maintain a class action 'must affirmatively demonstrate his compliance' with Rule 23." *Comcast*, 133 S. Ct. at 1432 (quoting *Wal-Mart*, 131 S. Ct. at 2551-52). Rule 23 is not a "mere pleading standard." *Wal-Mart*, 131 S. Ct. at 2551.[8]

"On a motion for class certification, the burden is at all times on the party proposing the class." *Shayler* v. *Midtown Investigations, Ltd.*, 2013 WL 772818, at *3 (S.D.N.Y. Feb. 27, 2013) (Forrest, J.).[9] "The district court must 'receive enough evidence, by affidavits, documents or testimony, to be satisfied that each Rule 23 requirement has been met.'" *Palmer Kane LLC* v. *Scholastic Corp.*, 2012 WL 2952898, at *6 (S.D.N.Y. July 16, 2012) (Forrest, J.) (quoting *Teamsters Local 445 Freight Division Pension Fund* v. *Bombardier Inc.*, 546 F.3d 196, 204 (2d Cir. 2008)). Here, "Plaintiffs have proffered only boilerplate assertions as to why class treatment would be superior." *Shayler*, 2013 WL 772818, at *10. That is not enough.

---

[8] Plaintiffs' reliance on the 39 year old decision in *Eisen* v. *Carlisle & Jacquelin*, 417 U.S. 156 (1974), and the 45 year old decision in *Green* v. *Wolf Corp.*, 406 F.2d 291 (2d Cir. 1968), is misplaced in light of the Supreme Court's recent decisions in *Comcast, Amgen* and *Wal-Mart*. *See Aguilar* v. *Immigration and Customs Enforcement Division of United States Department of Homeland Security*, 2012 WL 1344417, at *3 (S.D.N.Y. Apr. 16, 2012) (Forrest, J.) ("It is possible that had the plaintiffs here moved for class certification prior to the issuance of *Wal-Mart*, and long before 2012, that the outcome here would be different. Nevertheless, *Wal-Mart* is controlling precedent. . . .").

[9] "The plaintiff must prove the Rule 23 prerequisites by a preponderance of the evidence." *Smart Technologies,* 2013 WL 139559, at *2; *see also Shayler*, 2013 WL 772818, at *3 (citing *Wal-Mart*, 131 S. Ct. at 2551); *Wu* v. *Pearson Education Inc.*, 2012 WL 6681701, at *5-*6 (S.D.N.Y. Dec. 21, 2012) (Forrest, J.) (decertifying class certified prior to *Wal-Mart*); *Simington* v. *Lease Finance Group, LLC*, 2012 WL 6681735, at *8 (S.D.N.Y. Dec. 14, 2012) (Forrest, J.) (denying class action certification). This standard "requires more than mere possibility — it requires that a fact be shown to be more likely than not true." *Shayler,* 2013 WL 772818, at *3.

**II.    BECAUSE PLAINTIFFS HAVE NOT ESTABLISHED THAT THE FRAUD-ON-THE-MARKET PRESUMPTION OF RELIANCE IS JUSTIFIED IN THIS ACTION, INDIVIDUAL QUESTIONS PREDOMINATE**

"'Absent the fraud-on-the-market theory, the requirement that Rule 10b-5 plaintiffs establish reliance would ordinarily preclude certification of a class action seeking money damages because individual issues would overwhelm questions common to the class.'" *George*, 2013 WL 3357170, at \*3 (quoting *Amgen*, 133 S. Ct. at 1193); *In re Federal Home Loan Mortgage Corp. (Freddie Mac) Securities Litigation*, 281 F.R.D. 174, 177 (S.D.N.Y. 2012) (Cedarbaum, J.). *See also In re American International Group, Inc. Securities Litigation*, 689 F.3d 229, 232 (2d Cir. 2012) ("We hold that, under *Amchem Products, Inc.* v. *Windsor*, 521 U.S. 591, 620 . . . (1997), a securities fraud class's failure to satisfy the fraud-on-the-market presumption primarily threatens class certification by creating 'intractable management problems' at trial.").

Thus, foremost among Plaintiffs' burdens is the obligation to establish by a preponderance of the evidence their entitlement to a class-wide rebuttable presumption of reliance through application of the "fraud on the market" theory. Indeed, "[c]lass certification is *only* warranted if plaintiffs can establish by a preponderance of the evidence a class-wide presumption of reliance by virtue of the presence of an efficient market critical to the fraud-on-the market theory." *George*, 2013 WL 3357170, at \*7 (emphasis added). "[P]laintiffs must demonstrate . . . that the stock traded in an efficient market." *Halliburton*, 131 S. Ct. at 2185.[10]

As demonstrated in the declaration of Professor Joseph A. Grundfest ("Grundfest Decl.") submitted herewith, the analysis put forth by Plaintiffs through their proposed expert, Michael A. Marek, is critically flawed.  As Professor Grundfest demonstrates, even during overlapping hours, Germany, not the United States, is the dominant trading market for price discovery for Deutsche Bank GRSs, and the NYSE is a lagging satellite market in terms of price discovery. *See* Grundfest Decl. at ¶ 34.  Mr. Marek did not at all consider, and performed no analysis

---

[10] *See Basic*, 485 U.S. at 241-42; *Teamsters*, 546 F.3d at 210 (finding plaintiffs "failed to show by a preponderance of the evidence that the [securities] traded in an efficient market"); *Freddie Mac*, 281 F.R.D. at 182 (same).

whatsoever of, the efficiency of the German stock market for the trading of Deutsche Bank GRSs during the proposed class period, nor is he an expert on that subject. *See* Marek Dep. (Ex. 1), at 127:22-128:15, 129:2-5:

> "Q.  In connection with your assignment in this lawsuit, have you undertaken any study whatever of the German stock market?
>
> "A.  No.  I have not. . . . .
>
> "Q.  In this lawsuit, are you presenting yourself as an expert on the efficiency of any market outside the United States?
>
> "A.  No. . . .
>
> "A.  No.  I've rendered no opinion on the efficiency of the German stock market or any other than the New York Stock Exchange in this matter."

Because Mr. Marek undertook no analysis of the dominant German market (and particularly the price formation in the German market as well as the relationship between the prices formed in the two markets), his methodology for concluding that the market for Deutsche Bank GRSs trading on the NYSE is efficient is unreliable. *See* Grundfest Decl. at ¶ 9:

> "Plaintiffs and their expert cannot reach a reliable conclusion regarding the efficiency of the market for Deutsche Bank GRSs absent a careful analysis of (1) the mechanics of price formation on the German equities markets; (2) a study of the efficiency of Deutsche Bank GRSs as traded on their German home markets during the alleged Class Period; and (3) an analysis of the relationship between trading on the German markets and trading on the United States markets.  This is the case because, as explained in greater detail below, almost all the allegedly material information regarding Deutsche Bank was disclosed while the U.S. markets were closed, either just before the German markets opened or while the German markets were open.  Volume in the German markets far exceeded volume in the U.S. markets, and during periods when both the German and U.S. markets were open, German markets strongly led the U.S. markets in price formation.  For shares of Deutsche Bank, Germany's largest financial institution, price formation for the information at issue would thus have occurred primarily in the German markets, and appropriate tests of market efficiency should therefore also closely examine Deutsche Bank GRSs' price formation on the German markets during the alleged Class Period.  Plaintiffs' expert Michael A. Marek has not considered the operation of the German markets in any manner.  His conclusions regarding the efficiency of the market for Deutsche Bank GRSs are therefore unreliable."

Moreover, as demonstrated in the Declaration of Professor Paul A. Gompers ("Gompers Decl.") submitted herewith, Mr. Marek's analysis of the U.S. market is seriously flawed. *See* Gompers Decl. at ¶¶ 6-15.  Mr. Marek does not address the fact that the proposed class period

was a time of unprecedented economic crisis.[11] Mr. Marek failed to consider the fact that, in an

unsuccessful effort to stabilize markets, the SEC and foreign regulators issued multiple

Emergency Orders during the proposed class period restricting short selling of certain securities,

including Deutsche Bank GRSs, the specific security at issue in this case. *See* Gompers Decl. at

¶¶ 32-35.[12]

      Mr. Marek admits that arbitrage is "one of the principal hallmarks of an efficient market"

(Marek Dep. (Ex. 1), at 193:2-4), and that short selling can be "one of the principal tools in

arbitrage" (*id.* at 192:23-25) and "[c]ertainly short selling contributes to the strong side of

---

[11] The period January 3, 2007 through January 16, 2009 was a time of major bankruptcies, federal bailouts, widespread market dislocation and unprecedented government intervention in financial markets and the economy. The Court has acknowledged the "global liquidity crisis that began in the summer of 2007," *George* v. *China Automotive Systems, Inc.*, 2012 WL 3205062, at *12 (S.D.N.Y. Aug. 8, 2012) (Forrest, J.), became "a serious financial crisis in full bloom by the fall of 2008." *Delshah Group LLC* v. *Javeri*, 2013 WL 2322488, at *15 (S.D.N.Y. May 28, 2013) (Forrest, J.). Judges in this district have characterized the class period proposed in this action as "tumultuous," *City of Roseville Employees' Retirement System* v. *EnergySolutions, Inc.*, 814 F. Supp. 2d 395, 414 (S.D.N.Y. 2011) (Koeltl, J.), as "distinctly unique," *Freidus* v. *ING Groep N.V.*, 736 F. Supp. 2d 816, 839 (S.D.N.Y. 2010) (Kaplan, J.), and as a "worldwide financial crisis," *Valentini* v. *Citigroup, Inc.*, 837 F. Supp. 2d 304, 311 (S.D.N.Y. 2011) (Sand, J.).

[12] The SEC implemented its initial short sale ban in July of 2008 finding "that there now exists a substantial threat of sudden and excessive fluctuations of securities prices generally and disruption in the functioning of the securities markets that could threaten fair and orderly markets." SEC Release No. 58166, *Emergency Order Pursuant to Section 12(k)(2) of the Securities Exchange Act of 1934 Taking Temporary Action To Respond To Market Developments* (July 15, 2008) (Ex. 18), at 2; *see also* SEC Release No. 58248, *Order Extending Emergency Order* (July 29, 2008) (Ex. 19), at 2 ("The Commission continues to remain concerned about the ongoing threat of market disruption and effects on investor confidence . . . ."); SEC Release No. 58592, *Emergency Order Pursuant to Section 12(k)(2) of the Securities Exchange Act of 1934 Taking Temporary Action To Respond To Market Developments* (September 18, 2008) (Ex. 20), at 1 ("The Commission is aware of the continued potential of sudden and excessive fluctuations of securities prices and disruption in the functioning of the securities markets that could threaten fair and orderly markets."). In hindsight, the bans themselves likely disrupted the efficient functioning of the market. *See* Rachelle Younglai, *SEC Chief has Regrets Over Short-Selling Ban*, Reuters (Dec. 31, 2008) ("[SEC Commissioner Christopher] Cox told Reuters in a telephone interview from the SEC's Los Angeles office late on Tuesday. 'The costs appear to outweigh the benefits.' Less liquidity in the markets was one of the unintended consequences, experts have said."), *available at* http://www.reuters.com/article/2008/12/31/us-sec-cox-interview-idUSTRE4BU3FL20081231.

The short-sale ban imposed by German regulators lasted significantly longer, being implemented on September 20, 2008, and lasting past the end of the class period in this action. *See General Decree of BaFin on Short Selling* (Sept. 19, 2008) (Ex. 21); A. Beber and M. Pagano, *Short-Selling Bans Around the World: Evidence from the 2007-09 Crisis*, Journal of Finance, Vol. LXVIII, No. 1, at Table I (Feb. 2013) (Ex. 11); *see also id.* at 344 ("Our results indicate that the short-selling bans imposed during the crisis are associated with a statistically and economically significant liquidity disruption, that is, with an increase in bid-ask spreads and in the Amihud illiquidity indicator, controlling for other variables.").

finding a market efficient" (*id.* at 132:3-5).  Mr. Marek admitted that he knew that during the proposed class period both U.S. and German regulators restricted the short-selling of Deutsche Bank GRSs, but that he failed to consider it in connection with his work on this case.  *Id.* at 125:12-129:5; 130:18-134:9.  The issue surfaced when Mr. Marek was looking for "holes in [his] analysis" during preparation for his deposition.  *Id.* at 133:16-134:9.

Mr. Marek's failure to consider the fact that both U.S. and German regulators restricted the short sale of Deutsche Bank GRSs during the proposed class period requires denial of Plaintiffs' motion for class action certification.  *See ATSI Communications, Inc.* v. *Shaar Fund, Ltd.*, 493 F.3d 87, 101 (2d Cir. 2007) (noting that short selling "enhances pricing efficiency"); *In re Polymedica Corp. Securities Litigation*, 453 F. Supp. 2d 260, 273-77 (D. Mass. 2006) (denying class action certification where Plaintiffs expert did not adequately address the uncommonly high constraints on short selling of the securities at issue during the proposed class period).  With short selling restricted on two continents, the market for trading of Deutsche Bank GRSs was artificially constrained.[13]  Plaintiffs address none of this in their boilerplate papers.

Market efficiency is not assumed, and is often analyzed according to the multi-factor test laid out in *Cammer* v. *Bloom*, 711 F. Supp. 1264, 1286-87 (D.N.J. 1989).  *See George*, 2013 WL 3357170, at *9.  The "cause and effect" test is "the critical factor—the *sine qua non* of efficiency.  It speaks to the 'essence' of the efficient market hypothesis, and it is the foundation of the fraud on the market theory." *Freddie Mac*, 281 F.R.D. at 182 (finding that, "[w]ithout evidence of the prompt effect of unexpected news on market price, the market cannot be called efficient").  "Without the demonstration of such a causal relationship, it is difficult to presume that the market will integrate the release of material information about a security into its price.  An event study that correlates the disclosures of unanticipated, material information about a

---

[13] *See* Beber, *supra* note 12, at 372 (Ex. 11) ("Table VII shows that a domestic ban decreases liquidity not only in the home market but also in the foreign one; in contrast, a ban in the foreign market decreases liquidity only within that market. So when a ban is imposed at home, its effects spill over abroad, whereas the opposite is not true. These results suggest that the domestic market is the key one for the provision of liquidity both at home and in the U.S. market, in line with its dominant role in trading activity highlighted by Halling *et al.* (2008).").

security with corresponding fluctuations in price has been considered *prima facie* evidence of the existence of such a causal relationship." *Teamsters*, 546 F.3d at 207-08.

As detailed in the declaration of Professor Gompers, Mr. Marek's own study shows that the market fails to react to his "events" 9 out of 12 or 75% of the time. *See* Gompers Decl. at ¶¶ 12, 39, 47. A market reaction a mere 25% of the time is not consistent with proof of an "efficient market" for the trading of Deutsche Bank GRSs during the proposed class period. *See George*, 2013 WL 3357170, at *12 ("Even assuming that the methodology was proper, showing that only seven out of sixteen days resulted in a market reaction is an insufficient foundation upon which to pronounce market efficiency.").

Defendants need not show an inefficient market. *George*, 2013 WL 3357170, at *9. Defendants need only "demonstrate that plaintiffs' proffered proof of market efficiency falls short of the mark." *Id.* "That is precisely what defendants have done here." *Id.*

## III. BECAUSE DEFENDANTS MUST BE AFFORDED A REASONABLE OPPORTUNITY TO REBUT ANY CLAIM OF RELIANCE, THIS ACTION FAILS TO MEET THE SUPERIORITY REQUIREMENT OF RULE 23(B)(3)

Rule 23(b)(3) specifies that "the likely difficulties in managing a class action" are "matters pertinent" to the superiority finding. *American International Group*, 689 F.3d at 239; *see also* Fed. R. Civ. P. 23(b)(3). As to each member of the putative class, "defendants must be permitted to attempt to rebut the presumption by showing that plaintiffs would have transacted in securities notwithstanding any inflation in their market price caused by fraud." *GAMCO Investors, Inc.* v. *Vivendi, S.A.*, 2013 WL 765122, at *11 (S.D.N.Y. Feb. 28, 2013) (Scheindlin, J.). In this regard, the lessons of *Wal-Mart* need to be considered.

The District Court in *Wal-Mart* certified the class despite acknowledging that the "traditional *Teamsters* mini-hearing approach" would not be feasible, explaining that "[a]t least at this stage of the litigation, the court is satisfied that a formula for calculating Defendant's lump sum backpay liability to the class could be developed in a manageable manner . . . ." *Dukes* v. *Wal-Mart Stores, Inc.*, 222 F.R.D. 137, 176-78 (N.D. Cal. 2004), *aff'd*, 509 F.3d 1168 (9th Cir. 2007), *aff'd en banc*, 603 F.3d 571 (9th Cir. 2010), *rev'd*, 131 S. Ct. 2541 (2011). The

Supreme Court rejected this circumvention of defendant's right to assert and prove its defenses on an individualized basis:

> "The Court of Appeals believed that it was possible to replace such proceedings with Trial by Formula. . . . . We disapprove that novel project. Because the Rules Enabling Act forbids interpreting Rule 23 to 'abridge, enlarge or modify any substantive right,' a class cannot be certified on the premise that Wal–Mart will not be entitled to litigate its statutory defenses to individual claims."

*Wal-Mart*, 131 S. Ct. at 2560-61 (citations omitted).

Here, as in *Wal-Mart*, Defendants must have a meaningful opportunity to rebut any presumption of reliance, and therefore must conduct individualized inquiries into whether plaintiffs relied upon the "integrity" of the stock price in investing. That inquiry could involve hundreds or thousands of mini-trials (*see* Marek Decl. (Ex. 2), at ¶¶ 44, 48), involving a very diverse collection of investors, including, for example, numerous sophisticated institutions employing individual proprietary or algorithmic trading models, numerous "value investors" whose investment strategy is premised on identifying market inefficiencies, numerous index traders who trade on the basis of a predetermined index and not on fundamental information, and funds that screen purchases based on "Christian" or other values, and attach valuations to securities that are unrelated to market price (*e.g.*, for the Steward Funds, a company that promotes abortion would be viewed as having no value).[14]

We know from their own testimony that none of the proposed class representatives in this case actually relied on either the German stock market or the NYSE.

- Steward International held a large position in Deutsche Bank GRSs prior to the proposed class period (*i.e.*, before any alleged fraud), and its 30(b)(6) witness testified that all trades thereafter were made solely to accommodate the in-flow/out-flow of investor funds while continuing to replicate the holdings of the external S&P ADR (American Depository Receipts) Index. Wolf Dep. (Ex. A), at 36:14-41:19, 79:25-80:6. Investments were made "[n]o matter what the news about Deutsche Bank." *Id.* 129:2-132:10.

---

[14] The prospect of such individualized trials undermines the utility of the class action mechanism in this case. *See Board of Trustees IBEW-NECA Defined Contribution Plan* v. *Bank of New York Mellon Corp.*, 287 F.R.D. 216, 229-30 (S.D.N.Y. 2012) (Berman, J.) (the "need for 'mini-trials' to resolve individual issues" can render a class action unmanageable and weighs against a finding of superiority); *Spagnola* v. *Chubb Corp.*, 264 F.R.D. 76, 99 (S.D.N.Y. 2010) (Baer, J.) (finding that, in that case, "the need for mini-trials on the resolution of each class member's claims . . . detract[ed] from the superiority of the class action device, to say the least.").

- Steward Global based its investment decisions on the results of authentic dividend tests, which, once passed, resulted in the near-automatic purchase of Deutsche Bank GRSs. Wolf Dep. (Ex. A), at 103:9-24, 112:24-113:19. Investments in Deutsche Bank GRSs involved no fundamental analysis. *Id.* 103:17-24. All subsequent purchases were simply a matter of rebalancing the portfolio to accommodate flows of capital. *Id.* 113:20-114:8, 125:16-127:2.

- Building Trades and IBEW Local 90 admit to having zero knowledge about their investments in Deutsche Bank GRSs, Spear Dep. (Ex. B), at 86:9-87:16, 92:21-93:12; Poulaino Dep. (Ex. C), at 58:19-60:6, and to having long ago fired their investment advisor, the only party that did. Spear Dep. (Ex. B), at 26:4-26:10; Poulaino Dep. (Ex. C), at 78:2-78:15. That former advisor has refused to appear for deposition, stating that it has no one knowledgeable about Plaintiffs' transactions. *See* Barrett Decl. Ex. O.

It is Plaintiffs' burden to demonstrate how this action, should it survive summary judgment, could ever be tried on a class basis. But Plaintiffs' motion papers are silent. Either they have given no thought to the subject, or they have no good answer. Plaintiffs fail to consider Defendants' due process right to discovery to obtain the plaintiff-specific information to rebut the presumption as *Basic* contemplates. Nor do Plaintiffs acknowledge that Defendants would be entitled to a jury trial as to the reliance element of each class member's Rule 10b-5 claim. Plaintiffs' failure cannot be overlooked because this is an issue that the Court of Appeals has made clear must be addressed now. "In the context of a litigation class, postponing analysis of the defendant's rebuttal arguments until after certification is inappropriate because the rebuttal could demonstrate that individual reliance issues would render a trial unmanageable, thereby defeating the predominance requirement." *American International Group,* 689 F.3d at 242.

Plaintiffs would be wrong to suggest that *Basic* v. *Levinson* somehow implies that the Court need not examine manageability issues in Rule 10b-5 actions. The four justice opinion adopting the fraud-on-the-market presumption in *Basic* is silent on the question of manageability; that issue was not even before the Court. *Basic* does not do away with the reliance element of the Rule 10b-5 claim, nor does it give rise to an irrebuttable presumption of reliance. To the contrary, *Basic* provides that the fraud-on-the-market presumption of reliance is rebuttable, and that "[a]ny showing that severs the link between the alleged misrepresentation

and either the price received (or paid) by the plaintiff, or his decision to trade at a fair market price, will be sufficient to rebut the presumption of reliance." *Basic*, 485 U.S. at 248-50.[15]

As is clear from *Wal-Mart*, the Court cannot certify a class on the premise that defendants may be entitled to limited (or no) discovery on the reliance elements of the claim against them, and will have no real opportunity to develop a factual record and assert their rights to rebut the presumption of reliance as to particular investors (who may number in the hundreds or thousands) in the jury trials the Seventh Amendment guarantees. Certifying a class in these circumstances would deprive Defendants of their Due Process rights to present all available defenses.[16] Superiority is established only when "'a class action would achieve economies of time, effort, and expense, and promote . . . uniformity of decision as to persons similarly situated, *without sacrificing procedural fairness or bringing about other undesirable results.*" *Amchem*, 521 U.S. at 615 (quoting Fed. R. Civ. P. 23(b)(3) Advisory Committee's Note (1966 Amendment)) (emphasis added). Plaintiffs have not satisfied their burden of showing that the superiority requirement of Rule 23(b)(3) is met in this action.

---

[15] *See also id.* at 251 (White, J. concurring in part and dissenting in part) ("I agree with the Court that if Rule 10b-5's reliance requirement is to be left with any content at all, the fraud-on-the-market presumption must be capable of being rebutted by a showing that a plaintiff did not 'rely' on the market price. For example, a plaintiff who decides, months in advance of an alleged misrepresentation, to purchase a stock; one who buys or sells a stock for reasons unrelated to its price; one who actually sells a stock 'short' days before the misrepresentation is made-surely none of these people can state a valid claim under Rule 10b-5.").

[16] *See Philip Morris USA Inc.* v. *Scott*, 131 S. Ct. 1, 3-4 (2010) (Scalia, J.) ("This is a fraud case, and in Louisiana the tort of fraud normally requires proof that the plaintiff detrimentally relied on the defendant's misrepresentations. Accordingly, the Court of Appeal indicated that members of the plaintiff class who wish to seek individual damages, rather than just access to smoking-cessation measures, would have to establish their own reliance on the alleged distortions. But the Court of Appeal held that this element need *not* be proved insofar as the class seeks payment into a fund that will *benefit* individual plaintiffs, since the defendants are guilty of a 'distort[ion of] the entire body of public knowledge' on which the 'class as a whole' has relied. Thus, the court eliminated any need for plaintiffs to prove, and denied any opportunity for applicants to contest, that any particular plaintiff who benefits from the judgment (much less all of them) believed applicants' distortions and continued to smoke as a result. Applicants allege that this violates their due-process right to 'an opportunity to present every available defense.' . . . The apparent consequence of the Court of Appeal's holding is that individual plaintiffs who could not recover had they sued separately *can* recover only because their claims were aggregated with others' through the procedural device of the class action. The extent to which class treatment may constitutionally reduce the normal requirements of due process is an important question").

**IV.     EACH OF THE FOUR PROPOSED CLASS REPRESENTATIVES IS SUBJECT TO UNIQUE DEFENSES THAT PRECLUDE CLASS CERTIFICATION**

Plaintiffs allege a concealed fraud, but are inconsistent as to when the alleged "truth" was revealed. On one hand, Plaintiffs allege "investors were not aware of [DB's] intentional and reckless conduct with respect to its mortgage operations until [the April 2011 release of the PSI Report, the May 2011 DOJ lawsuit involving MortgageIT and the September 2011 FHFA lawsuit]." Amended Complaint at ¶ 180. On the other, Plaintiffs allege that revelations about Deutsche Bank's "precarious position" "seeped into the market" over the course of the Class Period. *See id.* at ¶ 167 ("In September and October 2008, the financial markets dropped as problems in the financial industry became apparent, including the failure of Lehman Brothers. Deutsche Bank's stock also dropped as market observers recognized Deutsche Bank's precarious position. Deutsche Bank shares declined from [August to] late October 2008, as market participants realized that banks' past lending practices (including at Deutsche Bank) could lead to their collapse."); *see also id.* at ¶ 180 ("By the fall of 2008, it became apparent to the market that Deutsche Bank's debt securities were impaired, including its mortgage-related assets.").

Under either scenario, each of the proposed class representatives is subject to unique defenses based upon the timing of its purchases and sales in Deutsche Bank GRSs.

**A.     The Proposed Class Representatives Are "In-and-Out" Traders.**

The essence of Plaintiffs' allegation of a continuing fraud inflating the price of Deutsche Bank GRSs throughout the proposed class period that was not revealed until the April 2011 release of the PSI Report is that those who bought Deutsche Bank GRSs during the proposed class period paid too much. But accepting Plaintiffs' allegations as true, it also means that those who sold Deutsche Bank GRSs before the alleged "truth" was revealed received too much.

Here, Building Trades and both Steward Funds purchased and sold Deutsche Bank GRSs within the class period; IBEW Local 90 did both well before the alleged "truth" disclosure.[17] In

---

[17] *See* Summary Chart of Plaintiffs' Transactions, Barrett Decl. Ex. M. Building Trades sold all of its Deutsche Bank GRSs within the class period on January 9, 2009. *Id.* at 1. Steward Global sold throughout the class period, including on August 12, 2008 (180 GRSs), October 14, 2008 (450 GRSs) and November 7, 2008 (200 GRSs), before selling its remaining holdings on February 9, 2009. *Id.* at 3.

fact, Building Trades sold its entire investment in Deutsche Bank GRSs *during* the proposed class period – *i.e.*, at allegedly inflated prices.  *See* Summary Chart of Plaintiffs' Transactions (Ex. M), at 1.  Further complicating matters is that each of the proposed class representatives profited on at least some of its "in-and-out" trades.[18]  *See George*, 2013 WL 3357170, at *3, *7 (fact that in-and-out purchases resulted in a trading profit, while not determinative, would cause parties to "spend significant time and resources on this issue, overwhelming common issues").

Plaintiffs' status as "in-and-out" traders "subject them[] to unique inquiries regarding their trading patterns and why they made investment decisions, whether the fraud was in fact irrelevant to their purchasing and sales decisions, and whether on individual trades they profited." *Id.* at *7.  Such inquiries "require considerable time and resources and indeed threaten to become the focus of the litigation."  *Id.*  "[W]here something *other than* the alleged misstatement or omission caused a decline in the value of the security, the defendant has a 'negative loss causation' defense," *Smart Technologies*, 2013 WL 139559, at *8 (citing *In re Flag Telecom*, 574 F.3d 29, 35-36 (2d Cir. 2009)), which is likely atypical as applied to the rest of the class, rendering plaintiffs unfit to serve as class representatives.  *Smart Technologies*, 2013 WL 139559, at *8; *George*, 2013 WL 3357170, at *7 n.7 ("The only way that plaintiffs could conceivably prove otherwise would be to [submit] proof that would establish by a preponderance

---

Steward International sold on June 7, 2007 (160 GRSs), September 5, 2007 (130 GRSs), September 7, 2008 (20 GRSs), February 4, 2008 (130 GRSs), July 7, 2008 (200 GRSs) and October 3, 2008 (230 GRSs), before selling additional holdings in 2009 (270 GRSs), 2010 (3,740 GRSs) and 2011 (3,950 GRSs). *Id.* at 5-6.  In all, Steward International sold 17 different times between the start of the class period and the alleged "truth" disclosure. *Id.*  IBEW Local 90 sold most of its Deutsche Bank GRSs in April 2009 (1,500 GRSs) and June 2009 (325 GRSs). *Id.* at 2.

[18] Building Trades purchased 6,700 GRSs of Deutsche Bank on October 28, 2008 at a price of $30.22 per GRS, before selling its entire holdings (11,800 GRSs) on January 9, 2009 for $32.90 per GRS, netting a profit of $2.72 per GRS on its October purchases.  Summary Chart of Plaintiffs' Transactions (Ex. M), at 1. Steward International sold 160 GRSs of Deutsche Bank on June 7, 2007 at a price of $144.46 per GRS, $4.23 more than the average price of its seven purchases (230 total GRSs) up to that point during the class period.  *Id.* at 4-5.  Steward Global's sale of 180 GRSs on August 12, 2008 for $94.44 per GRS is likewise more than it paid for its prior class period purchase of 440 GRSs on July 7, 2008 at $84.16 per GRS.  *Id.* at 3.  IBEW Local 90 made good on its purchase of Deutsche Bank GRSs in October 2008 (500 GRSs at $45.79 per GRS) and February 2009 (1300 GRSs at $23.53 per GRS) by later sales of 1100 GRSs on April 9, 2009 for $48.76, 400 GRSs on April 27, 2009 for $55.03, 325 GRSs on June 1, 2009 for $69.27 and 1,175 GRSs on October 19, 2009 for $83.26.  *Id.* at 2.

of the evidence that their trading patterns were in fact typical of the class.").[19]

**B.      The Proposed Class Representatives Are Post-Disclosure Purchasers.**

Accepting Plaintiffs' alternative allegations that the market was aware of Deutsche Bank's "precarious position" by September 2008,[20] the proposed class representatives made post-disclosure purchases of Deutsche Bank GRSs and are "subject to unique defenses which threaten to become the focus of the litigation." *George*, 2013 WL 3357170, at *5 (quoting *Gary Plastic Packaging Corp.* v. *Merrill Lynch, Pierce, Fenner & Smith, Inc.*, 903 F.2d 176, 180 (2d Cir. 1990)).   Steward International purchased 260, 710, and 130 GRSs on October 7, 2008, November 3, 2008, and December 1, 2008, as well as 6,850 GRSs in 2009 and 2010.   Summary Chart of Plaintiffs' Transactions, (Ex. M), at 4-5.   Building Trades purchased 6,700 GRSs on October 28, 2008.   *Id.* at 1.   IBEW Local 90 purchased 500 GRSs on October 20, 2008.   *Id.* at 2.

Plaintiffs do not assert that they were "averaging down" – indeed, the testimony of the Steward Funds' Rule 30(b)(6) representative was that there were no investment decisions being made.   *See* Wolf Dep. (Ex. A), at 36:14-41:19, 112:24-114:8.   Instead, the model/index portfolios established before the start of the proposed class period (*i.e.*, before any allegation of fraud) were simply being adjusted to accommodate the inflow and outflow of investor funds.   *Id.* Such continued purchasing indicates that "the disclosure of the fraud was irrelevant to the named plaintiffs as demonstrated by their pattern of continued purchasing." *George*, 2013 WL 3357170, at *6; *Gary Plastic*, 903 F.2d at 179-80 (affirming district court's denial of class certification

---

[19] Those, like the proposed class representatives here, who both bought and sold during the proposed class period and before the alleged "truth" disclosure have no cognizable claim and should be excluded from any plaintiff class.  *See In re Flag Telecom Holdings, Ltd. Securities Litigation*, 574 F.3d 29, 40 (2d Cir. 2009) (excluding in-and-out traders from the class for failure to show evidence that they could—even conceivably—prove loss causation); *Schuler* v. *NIVS Intellimedia Technology Group, Inc.*, 2013 WL 944777, at *10 (S.D.N.Y. Mar. 12, 2013) (Wood, J.); *In re Refco Securities Litigation*, 2013 WL 4078410, at *2 (S.D.N.Y. Aug. 2, 2013) (Rakoff, J.) ("plaintiffs cannot claim damages where the same fraud alleged to be the cause of a loss also permitted a countervailing gain").

[20] The Amended Complaint contains several earlier alleged "truth" disclosures, including announcements by Deutsche Bank on April 29, 2008 and July 31, 2008 that it had taken multi-billion dollar writedowns relating to its RMBS assets (Amended Complaint at ¶¶ 160-65), and an August 1, 2008 credit rating downgrade by Standard & Poor's (*Id.* at ¶ 166).

where plaintiff continued purchasing the securities at issue despite having received notice of, and having investigated, the alleged fraud); *Rocco* v. *Nam Tai Electronics, Inc.*, 245 F.R.D. 131, 135-36 (S.D.N.Y. 2007) (Sprizzo, J.) (finding post-class purchases raised the possibility of unique defenses that threatened to become a focus of the litigation); *Greenspan* v. *Brassler*, 78 F.R.D. 130, 132 (S.D.N.Y. 1978) (McMahon, J.).  Given the timing of these trades, "it is certain that defendants will search out every individual angle and defense in relation to them." *George*, 2013 WL 3357170, at *7 ("[e]ither [in-and-out trades or post-disclosure purchases] would be sufficient separately to deny certification, together they simply multiply the problems with certification").

## V.   THE PROPOSED CLASS REPRESENTATIVES ARE NEITHER TYPICAL NOR ADEQUATE

A class representative is a fiduciary, and the interests of the class are "dependent upon his diligence, wisdom and integrity."  *Cohen* v. *Beneficial Industrial Loan Corp.*, 337 U.S. 541, 549-50 (1949).  Plaintiffs do not satisfy this most basic of standards.

### A.   Plaintiffs Either Refuse or Are Unable to Provide Proper Discovery.

Courts have long found proposed class representatives inadequate when they fail to comply with discovery requests.  *See Kline* v. *Wolf*, 88 F.R.D. 696, 700 (S.D.N.Y. 1981) (Weinfeld, J.) ("failure to comply with proper discovery inquiry may be considered on the issue as to whether a class representative lives up to his fiduciary obligation"), *aff'd*, 702 F.2d 400 (2d Cir. 1983); *Norman* v. *Arcs Equities Corp.*, 72 F.R.D. 502, 506 (S.D.N.Y. 1976) (Brieant, J.) ("One who will not comply wholeheartedly and fully with the discovery requirements of modern federal practice, is not to be regarded by this Court as one to whom the important fiduciary obligation of acting as a class representative should be entrusted.").

Here, the inability or outright refusal of Building Trades and IBEW Local 90 to provide basic and required discovery precludes a proper assessment of their fitness to act as class representatives.  Both are Taft-Hartley union pension funds that, according to their Rule 30(b)(6) witnesses, intentionally engage in "conscious avoidance" so as to remain in the dark as to any

and all investment decisions for liability purposes.  *See* Spear Dep. (Ex. B), at 92:21-93:12, 114:6-115:4; Poulaino Dep. (Ex. C), at 58:19-60:6.  There is not a single employee at either Plaintiff to explain the rationale for its investment in Deutsche Bank GRSs.  We are told that all such information resides exclusively with their investment advisor, AllianceBernstein LP.  *See* Spear Dep. (Ex. B), at 43:19-24, 200:10-203:9; Poulaino Dep. (Ex. C), at 16:24-17:23, 103:23-104:11.[21]  But both Plaintiffs fired AllianceBernstein.  *See* Spear Dep. (Ex. B), at 26:4-10; Poulaino Dep. (Ex. C), at 78:2-15.  Despite being subpoenaed to testify in this action, AllianceBernstein has refused to appear for deposition because purportedly it too has no employees who know anything about the trading in Plaintiffs' accounts.  *See* Correspondence with AllianceBernstein, Barrett Decl. Exs. N and O.[22]

In addition, all four proposed class representatives have refused to provide Rule 26(a)(1)(A)(iii) disclosure of damages.  *See* Barrett Decl. Ex. P, at 8.[23]  They also have refused to respond to a damage interrogatory pursuant to Local Civil Rule 33.3(a).  *See* Barrett Decl. Ex. Q, at 3, 5, 7; Ex. R, at 3, 5, 7; and Ex. S, at 3, 5, 7.  They have not presented any damage model, *see* Gompers Decl. at ¶¶ 15, 88-95, and Plaintiffs' expert admitted at deposition that it is possible that a class-wide damage model "can't be created."  Marek Dep. (Ex. 1), at 215:13-20.

## B.  The Christian Values-Based Steward Funds Are Atypical.

Class representatives must not raise "legal and factual issues unique to them that are likely to distract from their representation of the class."  *Brown* v. *Kelly*, 609 F.3d 467, 479 (2d Cir. 2010).  But that is exactly the case here.

---

[21] Building Trades had a second investment advisor, Eaton Vance, who sold all of its holding in Deutsche Bank GRSs on January 9, 2013.  *See* Spear Dep. (Ex. B), at 88:24-89:6.  Defendants first learned of Eaton Vance's involvement at the Rule 30(b)(6) deposition of Building Trades.  No documents related to Eaton Vance have been produced despite repeated requests.

[22] Nor is it possible to obtain relevant documents from the plaintiffs.  The Rule 30(b)(6) representative for Building Trades testified that she had long since "eliminated" (*i.e.*, shredded) all documents related to its investments in Deutsche Bank GRSs.  *See* Spear Dep. (Ex. B), at 163:2-164:5, 197:5-7.  IBEW Local 90 is little better.  It produced some monthly statements, but again it has absolutely no documents explaining its investments in Deutsche Bank GRSs.  *See* Poulaino Dep. (Ex. C), at 49:18-50:15.

[23] The three Lead Plaintiffs have objected to providing such discovery, IBEW Local 90 has not served mandatory Rule 26(a) disclosures at all.

The Biblical screening policies of the Steward Funds, while perfectly acceptable as a personal investment philosophy, raise unique and potentially polarizing issues that are likely to distract or even alienate potential jurors.  As stated on their Web site and during the deposition of their 30(b)(6) representative, the Steward Funds take their direction from the Assemblies of God Church; they screen for only those investments "consistent with Biblical principles and a Christian lifestyle."  Barrett Decl. Ex. D, at 3, 5; Ex. E, at 3, 5; Wolf Dep. (Ex. A), at 10:9-11:7, 14:16-14:23, 19:12-16, 33:9-24.  Because of their unyielding stance against abortion and other conduct the Assemblies of God Church considers to be vices, appointment of the Steward Funds as class representatives would unnecessarily risk polarizing any jury assembled to hear this case, and could unfairly distract from any trial on the merits.

## C.     This Is Inappropriately Lawyer-Driven Litigation.

"It is axiomatic . . . that the lead plaintiff provisions of the [Private Securities Litigation Reform Act] were intended to curtail . . . 'lawyer-driven' litigation, *i.e.*, lawsuits that, because of the huge potential fees available in contingent securities fraud class actions, were initiated and controlled by the lawyers and appeared to be litigated more for their benefit than for the benefit of the shareholders they ostensibly represented." *Iron Workers Local No. 25 Pension Fund* v. *Credit–Based Asset Servicing and Securitization, LLC,* 616 F. Supp. 2d 461, 463 (S.D.N.Y. 2009) (Rakoff, J.) (collecting cases); *see also City of Pontiac General Employees' Retirement System* v. *Lockheed Martin Corp.*, 844 F. Supp. 2d 498 (S.D.N.Y. 2012) (Rakoff, J.).

Here, none of the four plaintiffs felt in any way aggrieved and approached a lawyer to ascertain its rights.  *See* Wolf Dep. (Ex. A), at 56:15-58:4; Spear Dep. (Ex. B), at 120:13-122:7; Poulaino Dep. (Ex. C), at 122:9-14, 123:7-12.   Instead, years ago Robbins Geller or its predecessor firms signed each of the four Plaintiffs up to a "portfolio monitoring agreement" pursuant to which the Robbins Geller law firm was provided with the then most recent five years trading records of each Plaintiff and with contemporaneous copies of all of their monthly account statements going forward.  *See* Barrett Decl., Exs. F, G, H, I, J, and K.  The portfolio monitoring

agreements state that they are without fee and that Robbins Geller shall bear all expenses associated with the performance thereof.

In *Iron Workers*, Judge Rakoff characterized a Robbins Geller monitoring agreement in all material respects identical to those in this action as a "blatant[]" conflict of interest, as fostering "the very tendencies toward lawyer-driven litigation that the PSLRA was designed to curtail" and sufficient basis to hold the parties thereto (both plaintiffs and counsel) inadequate as class representatives. *Iron Workers*, 616 F. Supp. 2d at 464.[24]   While some courts have appointed institutional investors as class representatives despite the presence of a monitoring agreement, *City of Livonia Employees' Retirement System* v. *Wyeth*, 284 F.R.D. 173, 180 (S.D.N.Y 2012) (Sullivan, J.) (collecting cases), it remains an "open question" whether such agreements are proper. *See In re General Electric Securities Litigation*, 2009 WL 2259502, at *6 (S.D.N.Y. July 29, 2009) (Chin, J.) ("whether monitoring by law firms truly presents a conflict of interest is an open question").

What is not an open question is that "[a] class representative must 'not simply lend[] his name to a suit controlled entirely by the class attorney,' as the class is 'entitled to an adequate representative, one who will check the otherwise unfettered discretion of counsel in prosecuting the suit.'" *In re Monster Worldwide, Inc. Securities Litigation*, 251 F.R.D. 132, 135 (S.D.N.Y. 2008) (Rakoff, J.) (citation omitted). As Judge Friendly put it over 40 years ago with respect to shareholder litigation, "we are not willing to . . . accept the view that the attorney for the plaintiff is the *dominus litis* and the plaintiff only a key to the courthouse door dispensable once entry has been effected." *Saylor* v. *Lindsley*, 456 F.2d 896, 900 (2d Cir. 1972) (Friendly, J.).

---

[24] *See also Iron Workers Local No. 25 Pension Fund* v. *Credit–Based Asset Servicing and Securitization, LLC*, No. 08-cv-10841 (S.D.N.Y.), Hr'g Tr. 16:6-22, Apr. 1, 2009 (The Court: "It doesn't erase the inherent conflict in the way this came about, and I'm still not hearing, most respectfully, I'm not hearing from you why you think it's not a blatantly inherent conflict of interest to be wearing one hat and saying we're the objective monitors who are determining for you, the Iron Workers, where there are problems, and wearing, on the other hand, the hat of we are the people who are going to be zealously bringing this case and, then – this is really the heart of the problem – saying but we will only receive payment for the first advice if we bring and collect money as your advocate in the second situation."). If the Court has any doubt about the propriety of the confidential Robbins Geller Monitoring Agreements in this case, as in *Iron Workers* an evidentiary hearing should be held.

Here, no such checks exist.  Both Building Trades and IBEW Local 90 testified to a complete reliance on counsel.  Spear Dep. (Ex. B), at 222:12-21 ("Q. So you've done nothing to check on the accuracy of the allegations of Robbins Geller.  A. I'm reliant on counsel for their opinion regarding the Complaint, yes."), 174:14-24; Poulaino Dep. (Ex. C), at 124:18-24 ("Q. And what human being, give me names of people, what human beings do you identify as those individuals, on behalf of IBEW Local 90, who are overseeing and instructing counsel with respect to this lawsuit?  A.  I don't believe anybody is instructing counsel.").  Neither Plaintiff engages counsel, internal or external, to oversee its lawyers in this case.  Spear Dep. (Ex. B), at 173:7-174:24, 222:22-223:2; Poulaino Dep. (Ex. C), at 125:7-21.  The Rule 30(b)(6) witness for the Steward Funds testified to having zero knowledge about their oversight capabilities, *see* Wolf. Dep. (Ex. A), at 56:22-58:4, and confirmed that the Funds have absolutely no prior experience managing such class actions.  *Id.* at 143:25-144:16.

The deference to counsel shown by Building Trades and its Rule 30(b)(6) witness Marlyn J. Spear is particularly concerning.  In the Joint Declaration filed with the Court in support of its motion for appointment as Lead Plaintiff, Ms. Spear declared "under penalty of perjury" that Building Trades had decided to seek appointment as Lead Plaintiff together with the Steward Funds only after "conferring with the Steward Funds" and participating in a conference call with the Steward Funds to discuss the relevant issues.  *See* Declaration of David Rosenfeld, Dkt. No. 13, Ex. D (Joint Declaration) at 2.  But at deposition, Ms. Spear testified that she has never communicated with the Steward Funds and specifically had not participated in any such conference call.  Spear Dep. (Ex. B), at 97:19-98:10.  Instead, Building Trades "rel[ied] on counsel for putting together the information that they require[d]," and Ms. Spear reviewed a only portion of the joint declaration she signed.  *Id.* at 97:24-98:2, 101:12-102:25.

None of the mitigating factors that might otherwise alleviate the concerns raised by a monitoring agreement is present in this case.  For example, none of the proposed class representatives used more than one monitoring firm, which would have allowed them to "play[] off one against the other" in "determining whether a given lawsuit should be brought and in

determining the fee arrangement." *Iron Workers*, 616 F. Supp. 2d. at 466; *see also General Electric*, 2009 WL 2259502, at *6 n.4. Nor did they engage third-parties that could otherwise have provided an "evaluation of the monitoring firms' recommendations." *Iron Workers*, 616 F. Supp. 2d. at 466. Under similar circumstances, Judge Rakoff observed, "[w]hat is crystal clear to the Court is that the [Plaintiff pension fund] is in no position to adequately monitor the conduct of this complex litigation when it has not even taken the necessary steps to assure itself that the advice it is getting from its monitors is disinterested, let alone take the necessary steps to find out much about the lawsuit it is being asked to oversee." *Id.* at 466.

Congress enacted the PSLRA for the purpose of putting control of litigation back in the hands of parties, rather than enterprising lawyers. But each plaintiff fund in this case is nothing more than a key to the courthouse door for counsel who, pursuant to a highly suspect zero-fee monitoring agreement, sifts through the daily news to identify litigation opportunities and then searches for a plaintiff. There is no actual oversight of counsel exercised by any of the proposed class representatives. Indeed, none of the proposed class representatives has the capability to oversee outside counsel, and none could point to any instance in which oversight was exercised.

Finally, there is the matter of payments between Robbins Geller and its clients. "Active judicial involvement in measuring fee awards is singularly important to the proper operation of the class action process." Fed. R. Civ. P. 23(h) Advisory Committee's Note (2003). It was lying about secret fee sharing agreements that led to the incarceration of Mel Weiss and Bill Lerach. Yet, discovery in this case has revealed that – undisclosed to the Court – the Steward Funds have agreed to pay Robbins Geller 4% of any recovery they receive in this action, separate and apart from any court-approved fee. *See* Compliance Committee Meeting Minutes, Barrett Decl. Ex. L. When this hidden fee was put to the Steward Funds Rule 30(b)(6) representative, his only response was: "I can't really comment on it." Wolf. Dep. (Ex. A), at 151:17-152:16.

The imprimatur of this Court by certification of a class action is to be earned. It is not a matter of right. It is Plaintiffs' unshifting burden to establish by a preponderance of competent

evidence that all requirements of Rule 23 are satisfied and that it is appropriate to certify a plaintiff class in this action.  Plaintiffs have not come close to satisfying their burden in this case.

## CONCLUSION

Plaintiffs' motion for class action certification should be denied.

Dated:      August 29, 2013                    CAHILL GORDON & REINDEL LLP

By: /s/ Charles A. Gilman
      Charles A. Gilman
      David G. Januszewski
      Brian Barrett
80 Pine Street
New York, New York  10005
(212) 701-3000
*Attorneys for Defendants*